IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

Docket No. 22-16274

---

TONYA HALE

Plaintiff - Appellant

vs.

NV PROPERTY 1, LLC, DBA The Cosmopolitan of Las Vegas, a Nevada Limited

Liability Company; THE COSMOPOLITAN OF LAS VEGAS; RICHARD

SHERMAN, an individual

Defendants – Appellees

---

On Appeal From an Order of the

United States District Court

for the District of Nevada

---

BRIEF OF APPELLANT

---

Michael P. Balaban
LAW OFFICES OF MICHAEL P. BALABAN
10726 Del Rudini Street
Las Vegas, Nevada  89141

Attorney for Appellant

# TABLE OF CONTENTS

Page

I.    STATEMENT OF JURISDICTION     1

    A.    The Basis for the District Court's Jurisdiction     1

    B.    The Basis for the Court of Appeals Jurisdiction     1

    C.    Filing Date of the Appeal     1

    D.    Assertion that the Appeal is from a Final Order or Judgment that Disposes of All of Hale's Claims     2

II.    ISSUES PRESENTED     2

III.    STATEMENT OF CASE     3

IV.    STATEMENT OF FACTS     4

    A.    Plaintiff's Hiring by Cosmopolitan     4

    B.    January 10, 2018 Encounter with Sherman     4

    C.    Cosmopolitan Briefly Trespassed Sherman from the Property     6

    D.    February 6, 2018 Encounter with Sherman     7

    E.    Hale Seeking Treatment for Emotional Distress     8

    F.    Retaliation Hale Suffered after Reporting Sherman's Conduct to the Cosmopolitan     8

V.    SUMMARY OF ARGUMENT     9

VI.    STANDARD OF REVIEW     11

    A.    Legal Standard Applicable to a Motion to Dismiss     11

B.    Legal Standard Applicable to a Motion for
Summary Judgment    12

C.    Standard of Review for a Motion to Dismiss and a
Motion for Summary Judgment    14

VII.  ARGUMENT    14

A.    Introduction    14

B.    The District Court Erred in Dismissing Hale's Claims
for Intentional Infliction of Emotional Distress against
Cosmopolitan and Sherman, all without Leave to Amend    15

    1.    Hale has Plausibly Stated a Claim for Intentional
Infliction of Emotional Distress Against
Sherman and Cosmopolitan    15

C.    The District Court Erred in Finding there was No
Issue of Material Fact for Trial as to as to Whether
Cosmopolitan was Liable for Hostile Work
Environment Sexual Harassment under Title VII    24

    1.    Introduction    24

    2.    The Facts Presented here Show that Sherman's
Conduct Created a Hostile Work Environment
Sexual Harassment for Hale based on Sex/Gender    26

    3.    Cosmopolitan's Failed to Investigate Hale's Claims
of a Hostile Work Environment and take Reasonable
Steps to Correct it after both Incidents of Harassment
by Sherman and thus Should be Liable for the Same    33

D.    The District Court Erred in Finding there was No Issue of
Material Fact for Trial as to Whether Hale was Subjected
to Unlawful Retaliation by Cosmopolitan    39

VIII.  CONCLUSION    45

# TABLES OF AUTHORITIES
## FEDERAL CASES

<u>Page</u>

*American Ironworks & Erectors, Inc. v. North American Construction Corp.*, 248 F.3d 892, 897 (9th Cir. 2001) — 2

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 249, 252, 255 (1986) — 12-13

*Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) — 11-12

*Baldwin v. Blue Cross/Blue Shield of Alabama*, 480 F3d 1287, 1303 (11th Cir. 2007) — 33

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) — 11-12, 21

*Bombaci v. Journal Community Publishing Group, Inc.*, 482 F.3d 979, 986 (7th Cir. 2007) — 35

*Boumehdi v. Plastag Holdings*, LLC, 489 F.3d 781, 788 (7th Cir. 2007) — 29, 33

*Branda v. Sanford*, 637 P.2d 1223, 1224, 1227 (1981) — 18-20, 23

*Brooks v. City of San Mateo*, 229 F3d 917, 928 (9th Cir. 2000) — 39

*Burlington Indust., Inc. v. Ellerth*, 524 U.S. 742, 761, 765 (1998) — 35-36, 42

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) — 40, 44

*Catlin v. United States*, 324 US 229, 233 (1945) — 2

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) — 12

*City of Los Angeles, Harbor Division v. Santa Monica Baykeeper*, 254 F.3d 882, 889, fn. 1 (9th Cir. 2001) — 2

*Contreras v. Crown Zellerbach Corp.*, 88 Wash.2d
735, 565 P.2d 1173 (1977)                                                      18

*Davis v. Team Electric Company*, 520 F3d 1080, 1096 (9th Cir. 2008)          31-32

*DeSoto v. Yellow Freight Sys., Inc.,* 957 F.2d 655, 658 (9th Cir. 1992)       12

*Dey v. Colt Construction & Development Co.*,
28 F3d 1446, 1454 (7th Cir. 1994)                                              31

*Digital Equipment Corp. v. Desktop Direct, Inc.*,
511 U.S. 863, 868 (1994)                                                       2

*Dubric v. A-Cab, LLC*, Case No.: 2:15-cv-02136-
RCJ-CWH (D. Nev. 2016)                                                         19

*Ellison v. Brady*, 924 F2d 872, 879 (9th Cir. 1991)                          32

*Etchart v. Bank One Columbus, NA*, 773 F. Supp. 239 (D. Nev. 1991)           18

*Faragher v. City of Boca Raton*, 524 U.S. 775, 787-788,
807-808 (1998)                                                                30, 36

*Folkerson v. Circus Circus Enterprises., Inc.*, 107 F3d 754,
756 (9th Cir.1997)                                                            25

*Foman v. Davis,* 371 U.S. 178, 182 (1962)                                    12

*Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 422-424 (4th Cir. 2014)            25

*Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643, 646, 652 (9th Cir. 2021)        37-38
*Goodman v. Las Vegas Metropolitan Police Department*,
963 P.2d 1036 (Nev. 2013)                                                     19

*Giovanetti v. Trustees of California State University
(Humboldt State University)*, No. 04-cv-5514, 2007
WL 9735004, at *2 (N.D. Cal. Sept. 5, 2007)                                   40, 44

*Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)                    25, 30-31

iv

*Henson v. City of Dundee*, 682 F2d 897, 902 (1982)        25, 37

*Hutton v. General Motors Corp.,* 775 F. Supp. 1373 (D. Nev. 1991)    19

*J.D.H. v. Las Vegas Metropolitan Police Department*, Case No.:
2:13-cv-01300-APG-NJK (D. Nev. 2014)    18

*Kaltenbach v. Richards*, 464 F.3d 524, 526-527 (5th Cir. 2006)    11

*Kralik v. Durbin*, 130 F.3d 76, 81 (3rd Cir. 1997)    33

*Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 967 (9th Cir. 2002)    32

*Lockard v. Pizza Hut, Inc.*, 162 F3d 1062, 1073 (10th Cir. 1998)    24-26

*Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002)    14

*Maduike v. Agency Rent-a Car*, 953 P.2d 24, 26 (1998)    15

*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025,
1030 (9th Cir. 2008)    14

*Mazzeo v. Gibbons,* 649 F. Supp. 1182 (D. Nev. 2009)    19

*Meritor Savings Bank, FSB v. Vinson*, 477 US 57, 67 (1986)    26

*Moyo v. Gomez*, 40 F.3d 982, 985 (9th Cir. 1994)    39

*Norman v. Gen. Motors Corp.*, 628 F. Supp. 702, 704-05 (D. Nev. 1986)    15

*Olivero v. Lowe*, 995 P2d 1023, 1025 (Nev. 2000)    15

*Passananti v. Cook County*, 689 F3d 665, 659 (7th Cir. 2012)    29, 33

*Passantino v. Johnson & Johnson Consumer Products, Inc.*,
212 F3d 493, 506 (9th Cir. 2000)    39, 45

*Posadas v. City of Reno*, 851 P.2d 438 (Nev. 1993)    18

*Ramirez v. City of Reno,* 925 F. Supp. 681 (D. Nev. 1996)    18-19

*Ray v. Henderson*, 217 F.3d 1234, 1241-43 (9th Cir. 2000)       40

*Russo v. Shac, LLC*, 498 P.3d 1289 (Nev.App. 2021)       19

*Schaefer v. Diamond Resorts Int'l Mktg., Inc.*, Case No.:
2:14-cv-01900-GMN-CWH (D. Nev. 2015)       18

*Smith v. Frye*, 488 F.3d 263, 274 (4th Cir. 2007)       11

*Steiner v. Showboat Operating Co.*, 25 F.3d 1459 (9th Cir. 1994)       18, 20

*Stewart v. Rise, Inc.*, 791 F3d 849, 861-862 (8th Cir. 2015)       29

*Strother v. Southern California Permanente Group*, 79
F.3d 859, 870-71 (9th Cir. 1996)       45

*Swenson v. Potter*, 271 F3d 1184, 1193 (9th Cir. 2001)       33, 35-36

*Swentek v. USAIR, Inc.*, 830 F2d 552, 558 (4th Cir.1987)       33

*Tolan v. Cotton*, 572 U.S., 134 S.Ct. 1861, 1866 (2014)       13

*Valdez v. Rosenbaum*, 302 F3d 1039, 1043 (9th Cir. 2002)       14

*Voigt v. Savell*, 70 F3d 1552, 1564 (9th Cir. 1995)       14

*Xing Xing Lin v. Potter*, No. C 10- 03757 LB, 2011
WL 233053, at *11 (N.D. Cal. Jan. 22, 2011)       40

*Yartzoff v. Thomas*, 809 F.2d 1371, 1375 (9th Cir. 1987)       39, 45

## FEDERAL STATUTES

*29 C.F.R.* §825.308(c)(2)       43

*29 C.F.R.* §1604.11       26

*28 USC*, §1291       1

*28 USC*, §1331       1

*28 USC*, §1367(a)                                                                      1

*42 USC* §2000e, *et seq.*                                              1, 24-25, 39

## FEDERAL RULES OF CIVIL PROCEDURE

Federal Rules of Civil Procedure, Rule 8(a)(2)                      11, 20

Federal Rules of Civil Procedure, Rule 12(b)(6)                  11-12, 14

Federal Rules of Civil Procedure, Rule 15(a)                      12, 16

Federal Rules of Civil Procedure, Rule 56(c)                            12

## MISCELLANEOUS

*See* Bloomberg Law, Bloomberg Industry Group, Inc., Las Vegas
Casinos Split on Tougher Sexual Harassment Rules by Brenna
Goth (Daily Labor Report, October 12, 2018, 3:31 AM)                  22


*See* Las Vegas Business Press, New Nevada Gaming Control
Board regulation to add sexual harassment section by Laura
Jacobsen (March 2, 2020, 3:06 pm)(Updated March 10, 2020-2:47 pm)      22

Restatement (Second) of Agency § 219(2)(b)                            24

# I.

## STATEMENT OF JURISDICTION

**A.**   **The Basis for the District Court's Jurisdiction.**

The basis for the district court's jurisdiction was Title VII of the Civil Rights Act of 1964, *42 USC* §2000e, *et seq.* (hereinafter "Title VII") as the complaint involves a claim by Plaintiff and Appellant Tonya Hale ("Hale") for sex/gender discrimination, hostile environment sexual harassment and retaliation under the Title VII. In addition the district court had supplemental jurisdiction over Hale's state law claims for negligent hiring, supervision and retention and intentional infliction of emotional distress pursuant to *28 USC*, §1367(a). Jurisdiction was predicated upon these code sections as well as *28 USC*, §1331 as the action involved a federal question.

**B.**   **The Basis for the Court of Appeals Jurisdiction.**

The basis for the court of appeals jurisdiction is that the district court entered a final decision in the case. The circuit courts of appeals have jurisdiction over appeals from all final judgments of the district courts. *28 USC*, §1291.

**C.**   **Filing Date of the Appeal.**

On March 30, 2020 the district court entered its order granting Defendants and Appellees NV Property 1, LLC dba The Cosmopolitan of Las Vegas, a Nevada Limited Liability Company ("Cosmopolitan's") and Richard Sherman, an individual ("Sherman's) motion to dismiss as to Hale's claims for negligent hiring, supervision and retention and intentional infliction of emotional distress [Excerpt of Record (hereinafter "ER-") 18-24, Docket #36] and on July 26, 2022 the district court granted Cosmopolitan's motion for summary judgment, dismissing Hale's remaining causes of action against Cosmopolitan for sex/gender discrimination, hostile environment sexual harassment and retaliation. [ER-25-34, Docket #68.]

Also on July 26, 2022, the clerk of the district court filed its judgment in a civil case entering judgment in favor of Cosmopolitan and Sherman. [ER-35, Docket #69.] On August 20, 2022 Hale filed her notice of appeal of the district court's order granting Cosmopolitan and Sherman's motions to dismiss and Cosmopolitan's motion for summary judgment. [ER-158-159, Docket #71.]

**D.    Assertion that the Appeal is from a Final Order or Judgment that Disposes of all of Skinner's Claims.**

The district court entered its final judgment that disposed of all of Cosmopolitan and Sherman's on July 26, 2022. [ER-35, Docket #69.] A final judgment that disposes of all a party's claims is an appealable judgment. *Catlin v. United States*, 324 US 229, 233 (1945).[1]

## II.

### ISSUES PRESENTED

1.    Did the district court err in concluding that as a matter of law Hale failed to allege sufficient facts to plausibly support her claims against Cosmopolitan and Sherman for intentional infliction of emotional distress?

2.    Did the district court err as a matter of law in failing to grant Hale leave to amend her claims against Cosmopolitan and Sherman once it dismissed them by granting their respective motions to dismiss?

3.    Did the district court err in concluding that as a matter of law there are

---

[1] An appeal from the final judgment "draws into question" all of the earlier, interlocutory decisions that deemed to have "merged in the final judgment. *American Ironworks & Erectors, Inc. v. North American Construction Corp.*, 248 F.3d 892, 897 (9th Cir. 2001). As a general rule, "a party is entitled to a single appeal, to be deferred until final judgment has been entered, in which claims of district court error at any stage of the litigation may be ventilated." *Digital Equipment Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994); *City of Los Angeles, Harbor Division v. Santa Monica Baykeeper*, 254 F.3d 882, 889, fn. 1 (9th Cir. 2001).

not issues of material fact for a jury to decide as to Hale's claims against Cosmopolitan for hostile work environment sexual harassment and retaliation?

## III.

## STATEMENT OF CASE

Hale filed her complaint for damages and other relief against Cosmopolitan and Sherman on May 6, 2019. [ER-4-17, Docket #1.]

On August 28, 2019 Cosmopolitan filed a motion to dismiss Hale's causes of action against them for negligent hiring, supervision and retention and intentional infliction of emotional distress. [ER-162, Docket #10.] And on August 30, 2019 Sherman filed a motion to dismiss Hale's cause of action against him for intentional infliction of emotional distress. [ER-162, Docket #13.]

Further on April 12, 2021, Cosmopolitan filed a motion for summary judgment as to Hale's causes of action against them for sex/gender discrimination, hostile environment sexual harassment and retaliation. [ER-165, Docket #58.]

On March 30, 2020 the district court granted Cosmopolitan's motion to dismiss Hale's causes of action against them for negligent hiring, supervision and retention and intentional infliction of emotional distress and Sherman's cause of action against him for intentional infliction of emotional distress. [ER-18-24, Docket #36] and on July 26, 2022 the district court granted Cosmopolitan's motion for summary judgment, dismissing Hale's remaining causes of action against them for sex/gender discrimination, hostile environment sexual harassment and retaliation under the Title VII. [ER-25-34, Docket #68.]

Also on July 26, 2022, the clerk of the district court filed its judgment in a civil case entering judgment in favor of Cosmopolitan and Sherman. [ER-35, Docket #69.]

On August 20, 2022 Hale filed her notice of appeal notice of appeal to the district court's order granting summary judgment. [ER-158-159, Docket #71.]

## IV.

## STATEMENT OF FACTS

**A.    Plaintiff's Hiring by Cosmopolitan.**

On or around September 2013 Hale commenced her employment as a Table Games Supervisor and currently works at the Cosmopolitan in the same capacity. [ER-37, Hale Aff. ¶3.]

**B.    January 10, 2018 Encounter with Sherman.**

On January 10, 2018 at approximately 1:15 a.m. on the casino floor at Table 46 NFL football player Sherman, harassed and repeatedly verbally assaulted Hale, by among other things, yelling and screaming at her, berating her, using profanity towards her and others, making gender discriminatory comments to her and threatening her job. [ER-37, Hale Aff. ¶4.]

Sherman had an issue with Hale not allowing him to bet over the table limit by giving money to his entourage (ie. people with him) to bet for him.  Plaintiff was just following the casino policy of not allowing this to occur if the total he (and the people with him) was betting was over the table limit. [ER-37, Hale Aff. ¶5.]

Sherman started using profanity saying "F*** you, you mother f***er.  I'll have your f***ing job…I'll call the president tomorrow…don't tell me what to do or what I can do because…I've lost a lot of money here." [ER-37, Hale Aff. ¶6.]

Hale told Sherman to stop using profanity, but he did not comply. [ER-37, Hale Aff. ¶7.]

He told Hale if "she couldn't handle this then they should get someone who could."  Plaintiff inferred that Sherman was saying if she couldn't handle the situation because she was a woman that they should get a man to handle the situation. [ER-37, Hale Aff. ¶8.]

Dealer Maria Torres who was dealing at the table when Sherman confronted Hale, said she heard Sherman say to Plaintiff "do your job bitch" and also called Hale a "fat bitch". [ER-108-110, Torres Depo. 12:19-13:1, 21:4-13.]

He also questioned Hale's authority by calling her a nobody. [ER-109, Torres Depo. 13:3-6.]

Torres also recalls Sherman using profanity towards Hale. [ER-110, Torres Depo. 21:21-23.] Floor Supervisor Xiao Deux also heard Sherman use profanity on the night of January 10th. [ER-80-81, Deux Depo. 40:5-7, 41:3-4.] Deux also remembers Sherman calling Hale fat. [ER-82, Deux Depo. 65:10-12.]

Mirko Zhel Yazkov, another dealer who was dealing at the table when Sherman confronted Hale, said he might have heard Sherman call Plaintiff a bitch. [ER-116, Yazkov Depo. 41:1-11.]

In the opinion of Director of Tables Games Gorman a customer calling a female employee a bitch wouldn't be harassment under the law. [ER-92-93, Gorman Depo. 43:22-44:11.]

Frank Acker a Table Games Supervisor like Hale, was working at the table to the side of Plaintiff and heard Sherman keep on saying "Tonya, Tonya, Tonya, Tonya" to antagonize or harass Hale but couldn't hear anything else he was saying. [ER-62-63, Acker Depo. 31:14-32:18.]

Hale estimates this lasted for at least 15 to 25 minutes before Sherman was asked to leave by Casino Shift Manager Bentley who viewed much of the confrontation between Hale and Sherman as he was positioned near the table. [ER-37, Hale Aff. ¶9; ER-72-74, Bentley 26:21-27:5, 36:8-15.][2]

Further Bentley felt that Sherman directing obscenities and whatnot to employees was outrageous conduct. [ER-76, Bentley 87:1-10.]

---

[2] Yazkov agreed that the confrontation between Hale and Sherman lasted between 15 to 25 minutes. [ER-117, Yazkov Depo. 49:5-8.]

After the incident, Hale had a couple of customers and fellow employees come up to her and comment that they were sorry she had to go through what she did and how improper Sherman's conduct was towards her. [ER-37, Hale Aff. ¶10.]

Hale then contacted her attorney Michael Balaban who wrote a letter to the Cosmopolitan on January 16, 2018 outlining, among other things, what occurred on January 10, 2018 to which Cosmopolitan's General Counsel received and responded to on January 22, 2018. [ER-38, Hale Aff. ¶12; ER-58, 120-124, Balaban Aff. . ¶¶10, 11, Exs. 8, 9.]

Plaintiff also submitted an Intake Inquiry Form to the Nevada Equal Rights Commission ("NERC") on January 18, 2018 notifying them as to what had occurred on January 10, 2018. [ER-38, 41-42, Hale Aff. ¶13, Ex. 1.]

## C. Cosmopolitan Briefly Trespassed Sherman from the Property.

Although Sherman was briefly prevented from returning to the property after the Vice President of Security and Surveillance reviewed the video of what occurred that night, this lasted only one day before he was told he could continue to frequent the casino like nothing ever happened. [ER-37-38, Hale Aff. ¶11.]

David Logue, Vice President of Security and Surveillance for Cosmopolitan, met with Sherman the day after he was trespassed from the property, and because Logue didn't think the incident was severe enough and the fact that Sherman was apologetic and said that nothing like this would happen again, Logue lifted the trespass so Sherman could frequent the hotel and casino again. [ER-97-99, Logue Depo. 11:5-13, 17:14-18:7.] Sherman was required to show good behavior and not touch employees or verbally berate them and just let them do their job. [ER-103, Logue Depo. 51:2-10.]

Logue made the decision to lift the trespass from Sherman without talking to Plaintiff about the interaction she had with Sherman the night before. [ER-99, Logue Depo. 18:8-11.]

Logue said that Hale was free to contact the People Department (ie. Human Resources) about any harassment suffered under the law or under Cosmopolitan's policy Plaintiff experienced because of Sherman. [ER-100, Logue Depo. 22:13-21.]

Logue also did not think he would have changed his decision on lifting the trespass on Sherman if he knew Sherman had called Hale or another employee a "bitch" because that unfortunately is part of the business (and thus something the employees have to endure). [ER-101-102, Logue Depo. 24:15-25:11.]

**D.    February 6, 2018 Encounter with Sherman.**

Sherman came back to the Cosmopolitan on February 6, 2018 when Hale was working and continued to harass Plaintiff based on her sex, including berating, taunting and antagonizing her by calling out her name from the next table and screaming out loud "Tonya is wasting my time." [ER-38, Hale Aff. ¶14.]

He continued calling out her name by saying, "Tonya, why do you have something against me?  What have I done to you?" and kept taunting and berating her by yelling, "Tonya, you know, I don't understand.  What have I done to you?  Tonya don't like me."  Sherman also did some pushups in the middle of the floor to draw attention to himself. [ER-38, Hale Aff. ¶15.]

Right after this happened Hale texted and emailed her attorney telling him about what had occurred and then after her shift emailed Director of Tables Games Kellie Gorman telling her about what occurred on January 10th and that night. [ER-38, 43-48, Hale Aff. ¶16, Exs. 2 and 3.]  Further this email was received by Gorman. [ER 86, Gorman Depo. 20:12-14.]

Once Gorman received the email from Hale she sent it to human resources. [ER-86, Gorman Depo. 20:15-22.]  Gorman personally did not investigate anything that Plaintiff said in the email and was not told whether human resources investigated. [ER 86-87, Gorman Depo. 20:23-21:9.]

Gorman was not aware of any investigation such as interviewing dealers regarding what happened on January 10, 2018 to Hale. [ER-88, Gorman Depo. 29:13-24.] Or as to any complaints by Plaintiff that she was harassed and/or discriminated against either by Sherman and/or Bentley. [ER-89, Gorman Depo. 35:9-16.] Further Gorman admitted that assuming no investigation was done, that this was in direct contravention of Cosmopolitan's policy to investigate any claim of discrimination and/or harassment even if the CoStar (ie. employee) doesn't want them to. [ER 90-91, Gorman Depo. 38:19-39:10.]

**E.    Hale Seeking Treatment for Emotional Distress.**

Thereafter on February 19, 2018 Plaintiff went to ABC Therapy clinic for the emotional distress she was suffering from the encounters with Sherman including nightmares about Sherman accosting her and that he might be back in the future. [ER-38, 49-50, Hale Aff. ¶17, Ex. 4.]

Hale also confided in Frank Acker [about] the anxiety and panic attacks she suffered because of the incident. [ER-64, Acker Depo. 52:11-21.] Plaintiff also told Acker that she was going to seek treatment for the anxiety she was experiencing. [ER-67, Acker Depo. 56:11-20.]

**F.    Retaliation Hale Suffered after Reporting Sherman's Conduct to the Cosmopolitan.**

After reporting the incidents Cosmopolitan retaliated against Hale by almost completely removed Plaintiff from craps, her regular game. Where prior to reporting the incidents Plaintiff worked craps four or five times a week, after she reported the incidents she was lucky to work craps once or twice a month. [ER-38-39, 51-52, Hale Aff. ¶18, Ex. 5.] Frank Acker observed that Hale was taken out of dice way more often after the incident but he didn't know why. [ER-65, Acker Depo. 53:1-12.] He went on to say Hale was in dice a lot prior to the incident but couldn't give an exact number of times she was there after the incident. [ER-65-66,

Acker Depo. 53:14-54:19.]

Further, Cosmopolitan started harassing Plaintiff about taking her Family Medical Leave ("FML") including accusing her of taking FML days on Fridays a lot and questioning whether these requests were legitimate even though her doctor approved it due to her incidents. Cosmopolitan made her recertify her FML in April 2018 even though her prior FML certification should have been good until June 2018. [ER-39, 51-52, Hale Aff. ¶19, Ex. 5.]

In addition Cosmopolitan tried to write Plaintiff up for missing time that should have been covered under her FML. [ER-39, 53-54, Hale Aff. ¶20, Ex. 6.]

Finally, Hale wanted to take personal leave to visit her elderly mother out of town who had an aneurysm and even though Cosmopolitan eventually let her use her personal leave for the visit, they originally were forcing her to use her FML. [ER-39, 55-56, Hale Aff. ¶21, Ex. 7.]

## V.

## SUMMARY OF ARGUMENT

In what has become an increasing problem in Las Vegas casinos, casino employees are forced to put up with unruly customers as a condition of their employment.

In the case on appeal Sherman came in to Cosmopolitan on two occasions and harassed Hale by allegedly taunting her including continuing to yell her name, using profanity, called her a "fat bitch" and told her to "do your job bitch", questioned her authority manager arguably because she was a women and threatened her job.

It was so bad that a couple of customers and fellow employees came up to her and commented how sorry they were that she had to endure Sherman's verbally assaulting her and berating her.

Although Sherman was trespassed from the casino after the first incident

which occurred January 10, 2018, the trespass only lasted one day before the Vice President of Security and Surveillance lifted the trespass thus allowing Sherman to frequent the hotel and casino once again.

At no time did anyone from the Cosmopolitan ask Hale or anyone else from the gaming area where the incident occurred for statement or otherwise investigate what happened with anyone but Casino Shift Manager Bentley.

Sherman came back to the Cosmopolitan on February 6, 2018 when Hale was working and again harassed her, including berating, taunting and calling out her name and even did some push up in the middle of the floor to draw attention to himself.

Immediately after her shift ended when the second incident occurred, Hale emailed the Director of Table Games about what had occurred the night before on February 6th and what had occurred on January 10th. Although the Director of Table Games received the email neither she nor anyone from the Cosmopolitan got back to Hale to get a statement or to do any type of investigation as to the harassment including sexual harassment that Hale said occurred on January 10th and February 6th.

Thereafter Hale experienced retaliation from Cosmopolitan by them removing Hale from her regular game of craps, harassing her about taking FML and making her recertify her FML early, tried to write Hale up for missing time that should have been covered by FML and originally tried to force her to use her FML to visit her elderly mother out of town who had an aneurysm.

At the summary judgment stage the judge's function is not themselves to weigh the evidence and determine the truth of the matter at summary judgment. Further on a motion to dismiss, no claim will be dismissed merely because the trial judge disbelieves the allegations or feels that recovery is remote or unlikely.

Thus the district court clearly erred when it granted summary judgment for

Cosmopolitan on Hale's claim for hostile environment sexual harassment and retaliation. It further erred when it granted Cosmopolitan and Sherman's motion to dismiss Hale's claim for intentional infliction of emotional distress.

This being the case, Hale respectfully requests that the Court of Appeals overturn the district court's dismissal of her intentional infliction of emotional distress claim and its grant of summary judgment on Hale's hostile environment sexual harassment and retaliation claims.

Finally, Hale does not wish to appeal her claims for negligent hiring, supervision and retention and sex/gender discrimination.

## VI.

## STANDARD OF REVIEW

### A. Legal Standard Applicable to a Motion to Dismiss.

Rule 12(b)(6) motions test the sufficiency of a pleading. *Smith v. Frye*, 488 F.3d 263, 274 (4th Cir. 2007). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

Under Rule 12(b)(6), a claim may be dismissed either because it asserts a legal theory that is not cognizable as a matter of law or because the factual tale alleged is implausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

When a claim is challenged under this Rule, the court construes the pleading liberally in the pleader's favor. *Kaltenbach v. Richards*, 464 F.3d 524, 526-527 (5th Cir. 2006). The court presumes that all well-pleaded allegations are true, resolves all reasonable doubts and inferences in the pleader's favor, and views the pleading in the light most favorable to the non-moving party. *Twombly*, 550 U.S. at 555.

No claim will be dismissed merely because the trial judge disbelieves the allegations or feels that recovery is remote or unlikely. *Twombly*, 550 U.S. at 555-

556.

Courts will test for comportment with Rule 12(b)(6) by performing a two-step inquiry-first legal conclusions will be isolated, so as to uncover the pleading's purely factual allegations, and second, those factual allegations will be presumed true and then examined for plausibility. *Iqbal*, 556 U.S. at 677-678. Pleadings that are unable to show the requisite plausible entitlement to relief are thereby exposed by Rule 12(b)(6) at an early stage in the litigation so as to minimize the costs of time and money by litigants and courts. *Twombly*, 550 U.S. at 558.

Finally, if the court grants a motion to dismiss, it must then decide whether to grant leave to amend. Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis,* 371 U.S. 178, 182 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.,* 957 F.2d 655, 658 (9th Cir. 1992).

## B.    Legal Standard Applicable to a Motion for Summary Judgment.

 Under *Rule 56(c)*, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "More important….summary judgment will not lie if the dispute about a material fact is "genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.

"[T]rial courts should act....with caution in granting summary judgment...." *Id.* at 255." Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.*

Recently the Supreme Court reiterated the long standing standard a judge is supposed to use in deciding whether to grant summary judgment. In the case of *Tolan v. Cotton*, 572 U.S., 134 S.Ct. 1861, 1866 (2014), the Supreme Court reversed the lower court's grant of summary judgment, holding the lower court failed to credit the opposing party's evidence and the reasonable inferences therefrom, which contradicted the evidence of the moving party. *Id.* at 1866-1868.

In the decision the Supreme Court held that, "[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial'." (Citation omitted). "Summary judgment is appropriate only if 'the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law'." (Citation omitted). In making that determination, a court must view the evidence 'in the light most favorable to the opposing party'." (Citation omitted)." *Id.* at 1866.

**C.     Standard of Review for a Motion to Dismiss and a Motion for Summary Judgment.**

An order granting or denying a FRCP 12(b)(6) motion to dismiss for failure to state a claim is reviewed de novo. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030 (9th Cir. 2008).

Further the Ninth Circuit applies the de novo standard of review when reviewing a district court decision granting a motion for summary judgment. *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002).

In conducting a de novo review, the appellate court does not defer to the lower court's ruling, but independently considers the matter anew, as if no decision had been rendered on the matter below. *Voigt v. Savell*, 70 F3d 1552, 1564 (9th Cir. 1995).

The reviewing court must determine whether when viewing the evidence in the light most favorable to the nonmoving party there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Valdez v. Rosenbaum*, 302 F3d 1039, 1043 (9th Cir. 2002).

## VII.

## ARGUMENT

**A.     Introduction.**

As set forth below, the law on hostile environment is clear, an employee has the right to work in an environment free from discriminatory intimidation, ridicule, and insult.

Further the law of intentional infliction of emotional distress is clear and Sherman should have to answer for the extreme and outrageous conduct he exhibited towards Hale on the nights of January 10, 2018 and February 6, 2018.

This being the case, hopefully this Court will overturn the district court's grant of summary judgment and let a jury decide whether Cosmopolitan took

appropriate actions under the circumstances with regards to their duty to provide a workplace that was free from discriminatory and abuse that didn't unreasonably interfered with Plaintiff's job performance.

Further Hale seeks an order overturning the dismissal of her intentional infliction of emotional distress against Sherman and Cosmopolitan.

Finally, Plaintiff was unlawfully retaliated against for reporting Sherman's harassment which Hale also seeks relief by overturning the district court's grant of summary judgment on that claim.

**B. The District Court Erred in Dismissing Hale's Claims for Intentional Infliction of Emotional Distress against Cosmopolitan and Sherman, all without Leave to Amend.**

**1. Hale has Plausibly Stated a Claim for Intentional Infliction of Emotional Distress Against Sherman and Cosmopolitan.**

To establish a cause of action intentional infliction of emotional distress, the plaintiff must establish the following: (1) extreme and outrageous conduct with either the intention of, or reckless disregard for emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate cause. *Olivero v. Lowe*, 995 P2d 1023, 1025 (Nev. 2000).

"[E]xtreme and outrageous conduct is that which is 'outside all possible bounds of decency' and regarded as 'utterly intolerable in a civilized community.'" *Maduike v. Agency Rent-a Car*, 953 P.2d 24, 26 (1998).

Determination of whether a defendant's conduct amounts to an extraordinary transgression of the bounds of socially tolerable conduct is a fact-specific inquiry. See, e.g., *Norman v. Gen. Motors Corp.*, 628 F. Supp. 702, 704-05 (D. Nev. 1986). Courts consider a defendant's conduct on a case-by-case basis and in light of the totality of the circumstances. *See id*. (considering "totality of the circumstances" in determining whether conduct is extreme and outrageous).

First addressing the claim against Sherman, Hale complaint, subsequent statements made by her in her affidavit and what came out in discovery, plausibly shows that Sherman's conduct was extreme and outrageous under the "totality of the circumstances".[3]

This conduct by Sherman included Sherman harassing and repeatedly verbally assaulting Hale, by among other things, yelling and screaming at her, berating her, calling out her name, using profanity towards her and others, making gender/sex discriminatory comments to her and threatening her job on January 10, 2018 and February 6, 2018. [ER-37, Hale Aff. ¶4 and ER-38, Hale Aff. ¶14; Complaint at ¶¶11 and 17.]

Sherman started using profanity saying "F*** you, you mother f***er. I'll have your f***ing job…I'll call the president tomorrow…don't tell me what to do or what I can do because…I've lost a lot of money here." [ER-37, Hale Aff. ¶6.]

Hale told Sherman to stop using profanity, but he did not comply. [ER-37, Hale Aff. ¶7.]

He told Hale if "she couldn't handle this then they should get someone who could." Plaintiff inferred that Sherman was saying if she couldn't handle the situation because she was a woman that they should get a man to handle the situation. [ER-37, Hale Aff. ¶8; Complaint at ¶13.]

Sherman also told Plaintiff to "do your job bitch" and also called Hale a "fat bitch" and questioned Hale's authority by calling her a nobody according to dealer Maria Torres who was dealing at the table when Sherman confronted Hale. [ER-108-110, Torres Depo. 12:19-13:1, 13:3-6, 21:4-13.]

_____

[3] Discovery including statements made by the various witnesses at their depositions and Hale's affidavit should be considered because had the district court allowed Hale leave to amend her complaint as they should have, see Rule 15(a), *supra*, it is clear that there was sufficient facts not only to get by a motion to dismiss but also a motion for summary judgement.

Torres also recalls Sherman using profanity towards Hale as did Floor Supervisor Xiao Deux. [ER-110, Torres Depo. 21:21-23; ER-80-81, Deux Depo. 40:5-7, 41:3-4.] Deux also remembers Sherman calling Hale fat. [ER-82, Deux Depo. 65:10-12.]

Mirko Zhel Yazkov, another dealer who was dealing at the table when Sherman confronted Hale, said he might have heard Sherman call Plaintiff a bitch. [ER-116, Yazkov Depo. 41:1-11.]

Frank Acker a Table Games Supervisor like Hale, was working at the table to the side of Plaintiff and heard Sherman keep on saying "Tonya, Tonya, Tonya, Tonya" to antagonize or harass Hale but couldn't hear anything else he was saying. [ER-62-63, Acker Depo. 31:14-32:18.]

Hale estimates this lasted for at least 15 to 25 minutes before Sherman was asked to leave by Casino Shift Manager Bentley who viewed much of the confrontation between Hale and Sherman as he was positioned near the table. [ER-37, Hale Aff. ¶9; ER-72-74, Bentley 26:21-27:5, 36:8-15.][4]

Bentley confirmed in a statement he gave after the incident that Sherman was asked not to yell obscenities and berate the staff and when asked to leave he made contact with Bentley's right shoulder with his forearm. [ER-131-132, Exhibit H.] Further Bentley felt that Sherman directing obscenities and whatnot to employees was outrageous conduct. [ER-76, Bentley 87:1-10.]

After the incident, Hale had a couple of customers and fellow employees come up to her and comment that they were sorry she had to go through what she did and how improper Sherman's conduct was towards her. [ER-37, Hale Aff. ¶10.]

Sherman came back to the Cosmopolitan on February 6, 2018 when Hale

_____

[4] Yazkov agreed that the confrontation between Hale and Sherman lasted between 15 to 25 minutes. [ER-117, Yazkov Depo. 49:5-8.]

was working and continued to harass Plaintiff based on her sex, including berating, taunting and antagonizing her by calling out her name from the next table and screaming out loud "Tonya is wasting my time." [ER-38, Hale Aff. ¶14.]

He continued calling out her name by saying, "Tonya, why do you have something against me? What have I done to you?" and kept taunting and berating her by yelling, "Tonya, you know, I don't understand. What have I done to you? Tonya don't like me." Sherman also did some pushups in the middle of the floor to draw attention to himself. [ER-38, Hale Aff. ¶15.]

In the case of *Branda v. Sanford*, 637 P.2d 1223, 1227 (1981), the Supreme Court of Nevada held "a cause of action for intentional infliction of emotional distress was pled and prima facie proof given at trial." "The jury was entitled to determine, considering prevailing circumstances, contemporary attitudes and Cheryl's own susceptibility, whether the conduct in question constituted extreme outrage. *See Contreras v. Crown Zellerbach Corp.*, 88 Wash.2d 735, 565 P.2d 1173 (1977)." *Id.* "The district court also erred in dismissing this cause of action." *Id.*

This holding has been cited by numerous courts with approval in finding that the "extreme and outrageous" conduct element of a cause of action for IIED was met as a matter of law. *See Posadas v. City of Reno*, 851 P.2d 438 (Nev. 1993)(press release about police officer); *Schaefer v. Diamond Resorts Int'l Mktg., Inc.*, Case No.: 2:14-cv-01900-GMN-CWH (D. Nev. 2015)(harassing statements about women co-worker); *Etchart v. Bank One Columbus, NA*, 773 F. Supp. 239 (D. Nev. 1991)(statements made about an outstanding debt); *J.D.H. v. Las Vegas Metropolitan Police Department*, Case No.: 2:13-cv-01300-APG-NJK (D. Nev. 2014)(officer pushing and yelling at a mother relating to an auto accident); *Steiner v. Showboat Operating Co.*, 25 F.3d 1459 (9th Cir. 1994)(non-sexual desire harassing statements made by supervisor to subordinate); *Ramirez v.*

*City of Reno,* 925 F. Supp. 681 (D. Nev. 1996)(mishandling individual in the course of detaining him); *Hutton v. General Motors Corp.,* 775 F. Supp. 1373 (D. Nev. 1991)(attempting to transfer locations of plaintiff's employment); *Dubric v. A-Cab, LLC*, Case No.: 2:15-cv-02136-RCJ-CWH (D. Nev. 2016)(unwanted sexual advances of women employee by owner); *Russo v. Shac, LLC*, 498 P.3d 1289 (Nev.App. 2021)(sexual harassment by general manager or strip club of a female employee); *Mazzeo v. Gibbons,* 649 F. Supp. 1182 (D. Nev. 2009)(unwanted sexual advance by a man towards a women he met at a restaurant); and *Goodman v. Las Vegas Metropolitan Police Department*, 963 P.2d 1036 (Nev. 2013)(detention and arrest of individual).

The facts of *Branda* are similar to the case at bar in that in both cases a casino patron accosted a casino employee.

> In Branda "[t]he suit arose out of an incident which occurred at the Silverbird Hotel in Las Vegas on August 20, 1978. Cheryl Branda, then 15 years old, worked as a busgirl at the hotel." *Branda*, 637 P.2d at 1224. "That morning, as she performed her duties, she was confronted by Foxx (a/k/a Redd Foxx), who verbally accosted her with sexual innuendoes and became verbally abusive when she ignored his remarks." *Id.* "Foxx allegedly began the confrontation by asking Cheryl if her name was 'like in cherry.'" *Id.* "According to Cheryl and the testimony of two other witnesses, Foxx subsequently said or yelled at Cheryl, among other things, that she was a 'f--k--g bitch,' 'f--k--g c—t' and 'no lady.'" *Id.* "He is alleged to have also said that 'This is the one I want. This is her.'" *Id.* "He allegedly screamed at Cheryl causing a number of hotel patrons and employees to watch and listen to the altercation." *Id.*

The district court held in its order dismissing the case that "Branda had sufficiently pled a claim of intentional infliction of emotional distress under Nevada's notice pleading standard" but Hale did *not* meet the federal pleading

standard to survive a motion to dismiss[5], which is confusing because federal law also uses a notice pleading standard. *See* Fed.R. Civ. P. 8(a)(2).

And looking at the "'extreme and outrageous" conduct element, while Foxx might have used some sexual innuendoes that clearly weren't present in the language uttered Sherman, Sherman was arguably more verbally abusive in his utterances statement to Hale.

Both individuals used profanity and offensive terms toward women, Foxx allegedly calling Branda a "f--k--g bitch," and "f--k--g c—t" while Sherman allegedly told Hale a "do your job bitch" and also called Hale a "fat bitch".

But in this case Sherman also taunted Hale allegedly because she was a women by saying "F*** you, you mother f***er. I'll have your f***ing job…I'll call the president tomorrow" and "Tonya, why do you have something against me? What have I done to you?" and kept taunting and berating her by yelling, "Tonya, you know, I don't understand. What have I done to you? Tonya don't like me." Sherman also did some pushups in the middle of the floor to draw attention to himself as a way to taunt her.

The ninth circuit court of appeals has found that "while simple insults do not constitute intentional infliction of emotional distress, insults which include sexual or racial harassment may rise to that level." (citation omitted). "Finally, where there is public humiliation it is much more likely that the tort action will lie. (citation omitted). *See Steiner*, 25 F.3d at 1466.

Here both case arguably involved harassment based on sex/gender and in both cased the plaintiff was arguably subject to public humiliation. In Branda a "number of hotel patrons and employees [watched] and listen[ed] to the

---

[5] Motion to Dismiss Order at pg. 6, lns. 11–16.

altercation" and in this case both casino patrons and fellow casino employees watched and listened.

While the district court did not agreed that Sherman's conduct was extreme and outrageous and instead was more akin to insults, indignities, or threats that someone in Hale position just has to put up, when looking at Hale's affidavit and the different employee deposition excerpts, among other things, it is clear that under the "totality of the circumstances" a reasonable jury *could* agree that Sherman's conduct was extreme and outrageous.

Further while the district court opines that "[i]nteracting with a rude and aggressive individual in such a limited capacity is something that persons are necessarily expected and required to be hardened to", "that Sherman did not make sexual advances or comments to Hale, which could be considered extreme an outrageous" and "while Sherman's threats to have Hale fired and insinuations that Hale should have found an employee who could handle Sherman certainly show rudeness and insensitivity, they do not amount to extreme or outrageous"[6], it is clear that the district court was *not* looking at the facts or the allegations in the complaint in a light most favorable to Hale or making all reasonable inferences for Hale like is supposed to be done on a motion to dismiss (or for that matter a motion for summary judgment).[7]

First interacting with a rude and aggressive casino guest is not something a casino employee should be expected and required to do, especially to the extent of the conduct experienced from Sherman.

_____

[6] Order Motion to Dismiss at pg. 7, lns. 3–11.

[7] *See Twombly*, *supra*, 550 U.S. at 555 (The court presumes that all well-pleaded allegations are true, resolves all reasonable doubts and inferences in the pleader's favor, and views the pleading in the light most favorable to the non-moving party.)

While unfortunately casino guests get out of hand occasionally, this is not something that a casino employee should have to put up with as a condition of employment, especially when the conduct of the casino guest was "over the top" like Sherman's was.

In May 2018 a UNITE HERE"S Culinary and Bartender Unions survey of more than 10,000 Las Vegas casino worker found that 72% of those surveyed said a guess had made them feel uncomfortable or unsafe. [8]  This helped lead to passage of Nevada Gaming Control Board Regulation 5.250 which went into effect on March 1, 2020 to help address harassment including sexual harassment in gaming establishments in Nevada, not only by employees but by customers and patrons as well.[9]

This being the case, Hale disagrees (and it is likely that a reasonable jury would disagree) with the district court conclusion that she was expected and required to put up with unruly customers like Sherman as a condition of continued employment with the Cosmopolitan.

Second while Sherman did *not* make sexual advances towards Hale, he did make sexual comments to her by allegedly telling her to "do your job bitch" and also called Hale a "fat bitch", both of which could be considered extreme and outrageous.

_____

[8] *See* Bloomberg Law, Bloomberg Industry Group, Inc., Las Vegas Casinos Split on Tougher Sexual Harassment Rules by Brenna Goth (Daily Labor Report, October 12, 2018, 3:31 AM), http://news.bloomberglaw.com/daily-labor-report/las-vegas-casinos-split-on-tougher-sexual-harassment-rules.

[9] *See* Las Vegas Business Press, New Nevada Gaming Control Board regulation to add sexual harassment section by Laura Jacobsen (March 2, 2020, 3:06 pm)(Updated March 10, 2020-2:47 pm), http://businesspress.vegas/columns/experts-corner/new-nevada-gaming-control-board-regulation-to-add-sexual- harassment-section-22966/

Finally it *was* arguably extreme and outrageous conduct by Sherman when he made threats to have Hale fired and insinuated that Hale could handle *not* handle Sherman arguably because of her gender and they needed to hire someone who could.

In all these cases the district court made conclusory findings that Sherman alleged conduct was *not* sufficiently extreme and outrageous while supporting it by case authority which it says supports this conclusion, while it could have just as easily been said that the alleged conduct was sufficiently extreme and outrageous supported by other cases like *Branda* and other cases citing *Branda* for the adequacy of the extreme and outrageous conduct element.

As set forth above, whether something is extreme and outrageous enough uses a community standard which is better decided by a jury of Hale's peers instead of a judge who doesn't represent what the community standard is.

Apart from the requirement that the conduct be extreme and outrageous, Hale also plead and the evidence plausibly and reasonably shows that she suffered severe or extreme emotional distress and that was actually or proximate caused by Sherman's conduct.

This included the complaint which alleges at paragraph 67 that, "Sherman's and Cosmopolitan's actions did in fact cause severe emotional distress to Plaintiff, including but not limited to, crying attacks, embarrassment, feeling violated, having nightmares about the incident, being unable to sleep, indignity, humiliation, nervousness, tension, anxiety, recurring nightmares and depression, the extent of which is not fully known at this time."

Further the evidence shows that on February 19, 2018 Plaintiff went to ABC Therapy clinic for the emotional distress she was suffering from the encounters with Sherman including nightmares about Sherman accosting her and that he might be back in the future. [ER-38, 49-50, Hale Aff. ¶17, Ex. 4.]

23

Finally Hale also confided in Acker [about] the anxiety and panic attacks she suffered because of the incident. [ER-64, Acker Depo. 52:11-21.] Hale also told Acker that she was going to seek treatment for the anxiety she was experiencing. [ER-67, Acker Depo. 56:11-20.]

As to Cosmopolitan, this court should apply a negligence theory of liability to the harassing conduct of Sherman as in relates to Hale's cause of action against them for intentional infliction of emotional distress.

As the court explained in *Lockard v. Pizza Hut, Inc.*, 162 F3d 1062, 1073 (10th Cir. 1998), also cited *infra* with regards to Cosmopolitan's liability for hostile work environment sexual harassment, "[i]n cases involving harassment by co-workers, as opposed to harassment perpetrated by supervisory employees, the only basis for employer liability available is a negligence theory under Restatement (Second) of Agency § 219(2)(b)." (citations omitted.) "Because harassment by customers is more analogous to harassment by co-workers than by supervisors, we hold the same standard of liability applies to both co-worker and customer harassment." *Id.* "Thus, employers may be held liable in these circumstances if they "fail to remedy or prevent a hostile or offensive work environment of which management-level employees knew, or in the exercise of reasonable care should have known." (citation quotation omitted). *Id.*

As discussed in paragraph 66 of Hale's complaint, Cosmopolitan failed to do anything once it learned of Sherman's conduct as plead. Thus it should be liable for Sherman's conduct if they failed to remedy or prevent the conduct which management-level employees knew, or in the exercise of reasonable care should have known.

**C.    The District Court Erred in Finding there was No Issue of Material Fact for Trial as to as to Whether Cosmopolitan was Liable for Hostile Work Environment Sexual Harassment under Title VII.**

### 4.    Introduction.

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment

practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *42 USC* §2000e-2(a)(1). This language is not limited to economic or tangible discrimination. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). The phrase terms, conditions, or privileges of employment evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment. *Id.* When the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated. *Id.*

Conduct that creates a hostile or offensive environment for members of one sex (usually women) creates an arbitrary barrier to equality in the workplace and thus discriminates in the terms and conditions of employment. Workers should not be required to run a gauntlet of sexual abuse in return for the privilege of being allowed to work and make a living. *Henson v. City of Dundee*, 682 F2d 897, 902 (1982).

Further an employer may be liable for nonemployees' (e.g., customers' or vendors') harassment of its employees if the employer knew or should have been aware of the harassment and failed to take appropriate remedial action. *See Folkerson v. Circus Circus Enterprises., Inc.*, 107 F3d 754, 756 (9th Cir.1997) (An employer may be held liable for sexual harassment on the part of a private individual, such as the casino patron, where the employer either ratifies or acquiesces in the harassment by not taking appropriate remedial action); *see also Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 422-424 (4th Cir. 2014)(sex based and race based harassment of female independent sales representative); *Lockard,* 162

F.3d at 1073 (waitress sexually assaulted by restaurant customers).[10]

### 5. The Facts Presented here Show that Sherman's Conduct Created a Hostile Work Environment Sexual Harassment for Hale based on Sex/Gender.

To state a prima facie case for "hostile environment" sexual harassment under Title VII, plaintiff must allege that:

- plaintiff was subjected to unwelcome sexual advances, conduct or comments;
- the harassment complained of was based on sex;
- and the harassment was "so severe and pervasive" as to "alter the conditions of the victim's employment and create an abusive working environment. *Meritor Savings Bank, FSB v. Vinson*, 477 US 57, 67 (1986).

Looking at the first and second prongs, ie., "plaintiff was subjected to unwelcome sexual advances, conduct or comments" and "the harassment complained of was based on sex", the relevant evidence put forward by Hale is as follows:

On January 10, 2018 at approximately 1:15 a.m. on the casino floor at Table 46 NFL football player Sherman, harassed and repeatedly verbally assaulted Hale, by among other things, yelling and screaming at her, berating her, using profanity towards her and others, making gender discriminatory comments to her and threatening her job. [ER-37, Hale Aff. ¶4.]

---

[10] *See 29 C.F.R.* §1604.11, "An employer may also be responsible for the acts of non-employees, with respect to sexual harassment of employees in the workplace, where the employer (or its agents or supervisory employees) knows or should have known of the conduct and fails to take immediate and appropriate corrective action."

Sherman had an issue with Hale not allowing him to bet over the table limit by giving money to his entourage (ie. people with him) to bet for him. Hale was just following the casino policy of not allowing this to occur if the total he (and the people with him) was betting was over the table limit. [ER-37, Hale Aff. ¶5.]

Sherman started using profanity saying "F*** you, you mother f***er. I'll have your f***ing job…I'll call the president tomorrow…don't tell me what to do or what I can do because…I've lost a lot of money here. [ER-37, Hale Aff. ¶6.]

Hale told Sherman to stop using profanity, but he did not comply. [ER-37, Hale Aff. ¶7.]

He told Hale if "she couldn't handle this then they should get someone who could." Plaintiff inferred that Sherman was saying if she couldn't handle the situation because she was a woman that they should get a man to handle the situation. [ER-37, Hale Aff. ¶8.]

Dealer Maria Torres who was dealing at the table when Sherman confronted Hale, said she heard Sherman say to Hale "do your job bitch" and also called Hale a "fat bitch". [ER-108-110, Torres Depo. 12:19-13:1, 21:4-13.]

He also questioned Hale's authority by calling her a nobody. [ER-109, Torres Depo. 13:3-6.]

Torres also recalls Sherman using profanity towards Hale. [ER-107, Torres Depo. 21:21-23.] Floor Supervisor Xiao Deux also heard Sherman use profanity on the night of January 10th. [ER-80-81, Deux Depo. 40:5-7, 41:3-4.] Deux also remembers Sherman calling Hale fat. [ER-82, Deux Depo. 65:10-12.]

Mirko Zhel Yazkov, another dealer who was dealing at the table when Sherman confronted Hale, said he might have heard Sherman call Hale a bitch. [ER-116, Yazkov Depo. 41:1-11.]

Frank Acker a Table Games Supervisor like Hale, was work at the table to the side of Hale and heard Sherman keep on saying "Tonya, Tonya, Tonya, Tonya"

to antagonize or harass Hale but couldn't hear anything else he was saying. [ER-62-63, Acker Depo. 31:14-32:18.]

And as to the February 6, 2018 encounter with Sherman:

Sherman came back to the Cosmopolitan on February 6, 2018 when Hale was working and continued to harass Plaintiff based on her sex, including berating, taunting and antagonizing her by calling out her name from the next table and screaming out loud "Tonya is wasting my time." [ER-38, Hale Aff. ¶14.]

He continued calling out her name by saying, 'Tonya, why do you have something against me? What have I done to you?' and kept taunting and berating her by yelling, 'Tonya, you know, I don't understand. What have I done to you? Tonya don't like me.' Sherman also did some pushups in the middle of the floor to draw attention to himself. [ER-38, Hale Aff. ¶15.]"

Here Hale was verbally assaulted by Sherman, where he used profanity toward her, negative gender stereotypes, etc.

In that regard Dealer Torres heard Sherman call Hale a "fat bitch" and said "do your job bitch" and questioned Hale's authority by calling her a nobody. This is consistent with Hale saying that Sherman told Hale if "she couldn't handle this then they should get someone who could", arguably questioning her authority as a Table Games Supervisor because she was a woman.

Floor Supervisor Deux and remembers Sherman using profanity towards Hale on the night or January 10th and calling Hale fat. Finally Dealer Yazkoz thinks he remembers Sherman calling Hale a bitch on the night of January 10th.

Cosmopolitan's own employee handbook (ie. CoStar Guidebook), *see* ER-58, 125-130, Balaban Aff. ¶12, Ex. 10, gives examples of unacceptable conduct to include "negative stereotyping based on one's gender".

Merriam-Webster's dictionary defines the word "bitch" informally as "a malicious, spiteful, or overbearing woman" or "used as a generalized term of

abuse and disparagement for a woman".[11]

As to the second incident on February 6th, Sherman was arguably berating, taunting and antagonizing Hale because she was a woman in much the same way as he did on the night of January 10, 2018 by questioning her authority as a Table Games Supervisor because she was a woman.

Thus it is reasonable to conclude that the unwelcomed comments or conduct that Hale experienced by Sherman was based on sex.

Offensive conduct need not be sexual in nature to create a hostile environment in the workplace. A pervasive pattern of abuse directed at women violates Title VII even if not motivated by sexual desire. *See Boumehdi v. Plastag Holdings*, LLC, 489 F3d 781, 788 (7th Cir. 2007); *see also Passananti v. Cook County*, 689 F3d 665, 659 (7th Cir. 2012)(sexual harassment verdict in favor of female employee reinstated on appellate court finding that "jury could reasonably treat the frequent and hostile use of the word 'bitch' to be a gender based epithet that contributed to a sexually hostile work environment"); *Stewart v. Rise, Inc.*, 791 F3d 849, 861-862 (8th Cir. 2015)(summary judgment for the employer was improper where female African-American plaintiff alleged harassment by her subordinates [described as mostly Somali-born males] and a lack of corrective action by her supervisors. The alleged offensive conduct included referring to plaintiff as a "bitch".)

Next, the level of severity or pervasiveness required to transform a merely annoying or uncomfortable work environment into an actionable, sexually

---

[11] This is contrary to what the district court concluded its order, *see* Summary Judgment Order at pg. 8, lns. 22-23, or contrary to what Gorman said at her deposition, ER-92-93, Gorman Depo. 43:22-44;11, both of which appear to be mistaken.

harassing hostile environment is usually a question of fact, to be determined by looking at all the circumstances, including:

- frequency of the discriminatory conduct;

- its severity;

- whether it is physically threatening or humiliating, or a mere offensive utterance;

- whether it unreasonably interferes with an employee's work performance. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-788 (1998); *Harris*, 510 U.S. at 17.

Although Cosmopolitan tries to classify this as "two brief, isolated, interactions with a casino guest", Sherman's conduct was a lot more severe and pervasive than that.

As set forth above there were multiple statements, insults and threats made to Hale on each occasion Sherman accosted her.

Vice President of Security and Surveillance Logue said at his deposition, "on a nightly basis we have people that are rude, people that cuss, people that make offhanded remarks" [ER-99, Logue Depo. 18:20-22] and "my employees are called every name in the book just about every night" [ER-102, Logue Depo. 25:8-10][12], and while Hale doesn't expect Cosmopolitan to eliminate all obnoxious behavior from its casino floor, when an individual like Sherman is trespassed from its casino, allowed to return the next day and then again harasses Hale with no consequences, Cosmopolitan has arguable violated its duty under the law to provide a safe non-hostile environment to its employees.

_____

[12] See also the deposition of Torres where she said that players that act like Sherman happen a lot. [ER 111, Torres Depo. 29:17-21.]

Further, where the severity or pervasiveness of abuse is questionable, "it is more appropriate to leave the assessment to the fact-finder than for the court to decide the case on summary judgment." *Davis v. Team Electric Company*, 520 F3d 1080, 1096 (9th Cir. 2008).

Finally Sherman's conduct unreasonably interfered with Hale's work performance to the extent that she continued to be in fear that Sherman might come back to harass her in the future, among other things. [ER-38, 49-50, Hale Aff. ¶17, Ex. 4.][13]

Lastly whether the conduct is actionable under Title VII as hostile environment harassment requires both:

- an environment that a reasonable person would find hostile and abusive; and
- the victim's subjective perception that the environment is abusive. *Harris v. Forklift Systems, Inc.*, 510 US at 21-22.

The fact that Hale went and got attorney, filed a Charge of Discrimination with Nevada Equal Rights Commission and emailed Gorman regarding the second incident, missed work, and continued to fear that Sherman might again come back to harass her again in the future, shows that Hale subjectively perceives the environment as abusive.

_____

[13] Contrary to what the district court finding, *see* Summary Judgment Order at pg. 9, lns. 5-6 fn. 6, the fact that Hale was able to continue to work in the same workplace and perform her duties is not fatal to Hale's harassment claim. "[T]he mention in *Harris* of an unreasonable interference with work performance was not intended to penalize the employee who possesses the dedication and fortitude to complete her assigned tasks even in the face of offensive and abusive sexual (harassment). *Dey v. Colt Construction & Development Co.*, 28 F3d 1446, 1454 (7th Cir. 1994).

Finally a reasonable person (or reasonable woman)[14] would also feel Sherman's conduct is offensive. As mentioned above, other female employees such as Torres and Deux were there during the first incident and considered Sherman's conduct hostile and abusive. [ER-111-112, Torres Depo. 29:22-30:5; ER-80-81, Deux Depo 40:25-41-4.]

The district court conclusory statements that Sherman's conduct "does not rise to the level of sexual harassment to constitute a Title VII hostile environment claim"[15] is not supported by the evidence as set forth above. There were two separate incidences which included multiple statement and conduct by Sherman.

As the ninth circuit court of appeals has held, even a single incident of harassment "can support a claim of hostile work environment because the frequency of the discriminatory conduct is only one factor in the analysis," *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 967 (9th Cir. 2002). Further as cited above, when severity is questionable, "it is more appropriate to leave the assessment to the fact-finder than for the court to decide the case on summary judgment." *Davis*, 520 F.3d at 1096.

Finally although the district court claims that even if all reasonable inferences were drawn in Hale's favor that "none of the comments appear to be connected to unwelcome advances, comments, or conduct; nor do the comments or Sherman's conduct appear to be based on Hale's sex"[16], this clearly shows that the

---

[14] See *Ellison v. Brady*, 924 F2d 872, 879 (9th Cir. 1991) ("[A] female plaintiff states a prima facie case of hostile environment sexual harassment when she alleges conduct which a reasonable woman would consider sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.")

[15] Summary Judgment Order at pg. 8, ln. 18.

[16] Summary Judgment Order at pg. 8, lns. 19-21.

district court did not view the evidence in Hale's favor and make all reasonable inferences for Hale because as cited above "[a] pervasive pattern of abuse directed at women violates Title VII even if *not* motivated by sexual desire." *Boumehdi*, 489 F.3d at 788. Further as cited above a "jury could reasonably treat the frequent and hostile use of the word 'bitch' to be a gender based epithet that contributed to a sexually hostile work environment", *Passananti*, 689 F.3d at 659, and even though Sherman only allegedly used the term during the first incident it appears he used it multiple times.

Thus it is reasonable to conclude that Sherman's behavior towards Hale, including questioning her authority as a Table Games Supervisor, was because she was a woman. And it would be reasonable for a jury to conclude on the whole that Sherman's conduct toward Hale created a hostile work environment for her based on sex/gender.

### 6. Cosmopolitan's Failed to Investigate Hale's Claims of a Hostile Work Environment and take Reasonable Steps to Correct it after both Incidents of Harassment by Sherman and thus Should be Liable for the Same.

The most significant immediate measure an employer can take in response to a sexual harassment complaint is to launch a prompt investigation to determine whether the complaint is justified. An investigation is a key step in the employer's response, *see Swenson v. Potter*, 271 F3d 1184, 1193 (9th Cir. 2001); *see also Swentek v. USAIR, Inc.*, 830 F2d 552, 558 (4th Cir.1987); *Baldwin v. Blue Cross/Blue Shield of Alabama*, 480 F3d 1287, 1303 (11th Cir. 2007).

Here Cosmopolitan never took Hale's claims that Sherman was harassing her seriously and thus never investigated either the first confrontation Sherman had with Plaintiff on January 10, 2018 or the second confrontation on February 6, 2018.

First although Casino Shift Manager Bentley viewed the first confrontation

between Hale and Sherman, he didn't remember going over to the dealers or Hale to get their recollection of what happened on January 10th. [ER-74-75, Bentley 36:8-15, 70:19-24].

Second Vice President of Security and Surveillance for Cosmopolitan Logue made the decision to lift the trespass from Sherman without talking to Hale about the interaction she had with Sherman or otherwise investigating any harassment she claimed. [ER-99, Logue Depo. 18:8-11.][17]

Third Hale's attorney informed Cosmopolitan of the January 10th incident by writing them a letter on January 16, 2018 which was received and responded to on January 22, 2018 but no investigation ensued thereafter. [ER-38, Hale Aff. ¶12; ER 58, 120-124, Balaban Aff. ¶¶10, 11, Exs. 8, 9.]

Fourth Hale submitted an Intake Inquiry Form to the NERC on January 18, 2018 notifying them as to what had occurred on January 10, 2018 but there is no evidence that this prompted Cosmopolitan to investigate. [ER-38, 41-42, Hale Aff. ¶13, Ex. 1.]

Fifth after the second incident between Hale and Sherman occurred on February 6, 2018, Hale wrote an email to Director of Tables Games Kellie Gorman telling her about what occurred on February 6th and January 10th [ER-38, 43-48, Hale Aff. ¶16, Exs. 2 and 3] and she did *not* investigate *nor* was she aware of an investigation being done. [ER-86-89, Gorman Depo. 20:23-21:9, 29:13-24, 35:9-16].

---

[17] Although the Cosmopolitan Security Department did prepare an incident report [*see* ER-133-137, Exhibit L, Incident File Report], this had nothing to do with the harassment that Hale experience as she was *not* asked to give a voluntary statement from anyone from the Cosmopolitan regarding the incident which occurred on January 10, 2018. The only ones who were asked to give voluntary statements were Bentley who was allegedly pushed by Sherman and Security Officer Martinique Anderson who confronted Sherman about the trespass and pushing Bentley and was allegedly poked by Sherman with his finger.

Where a supervisor receives a credible complaint of sexual harassment, the employer must make a reasonable effort to contact the alleged victim. *Bombaci v. Journal Community Publishing Group, Inc.*, 482 F.3d 979, 986 (7th Cir. 2007).

Further Gorman admitted that assuming no investigation was done, that this was in direct contravention of Cosmopolitan's policy to investigate any claim of discrimination and/or harassment even if the CoStar (ie. employee) doesn't want them to. [ER-90-91, Gorman Depo. 38:19-39:10.]

So even though Cosmopolitan's policy on a harassment-free workplace says that the "Cosmopolitan of Las Vegas will not tolerate the usage of epithets, slurs, jokes, negative stereotyping, threats or intimidation or any similar verbal or physical conduct that denigrates or show hostility or aversion towards an individual because of his/her race, color, religion, sex, pregnancy, national origin, age, disability, sexual orientation, gender orientation or expression or any other category or status protected by federal, state, and local law" and that they will investigate a complaint of harassment "regardless of whether the complaining CoStar (ie. employee) wants the Company to do so" [see ER-58, 125-130, Balaban Aff. ¶12, Ex. 10], there was absolutely *no* investigation of any interaction Sherman had with Hale on either January 10, 2018 or February 6, 2018.

Here although "liability cannot be premised on perceived inadequacies in the investigation" alone, *Swenson v. Potter*, 271 F3d at 1198, had Cosmopolitan investigated Hale's complaint from the outset, they could have *not* lifted Sherman's trespass after only a day and again trespassed him indefinitely when he violated the conditions of lifting the trespass order in the first place by him again harassing Hale on February 6th.

Thus Cosmopolitan could have prevented Sherman's harassment of Hale by reasonably investigating the incidents (as called for in their own company policies on harassment), when their employees had knowledge of the same or when Hale's her attorney made them aware of the occurrences. See *Burlington Indust., Inc. v.*

*Ellerth*, 524 U.S. 742, 765 (1998); *Faragher*, 524 U.S. at 807-808 (1998).[18]

Having concluded above that Cosmopolitan did virtually nothing to investigate Hale's complaints that she was generally harassed and sexual harassed by Sherman, the district court concluded in its order granting summary judgment that as a matter of law the investigation was adequate and at any rate liability "cannot be premised on the perceived inadequacies of [an] investigation" citing *Swenson v. Potter*, 271 F3d at 1198, *supra*.[19]

Not surprisingly the district court did not discuss any of the points Hale set forth above or when it did mention a point brought up above, it summarily looked at the facts in a light most favorable to Cosmopolitan and made reasonable inferences for Cosmopolitan, exactly opposite from what a judge is supposed to do in accessing and ruling on a summary judgment.

For example the district court concluded that "Cosmopolitan removed Sherman from the craps table immediately following the first incident, trespassing him from the property, and conducting a security investigation of the incident."[20]

As set forth above, Cosmopolitan might have done a security investigation of Sherman allegedly pushing Bentley and poking his finger at Security Officer Anderson but no one from Cosmopolitan did any investigation into the harassment that Hale experienced, either after the first incident or the second incident.

Further the district court concludes that even though Sherman was allowed back on the property after the first incident, "Sherman's behavior during the

---

[18] It's not enough for an employer to maintain a handbook with policies forbidding harassment and explaining how employees should report complaints of harassment, if the employer doesn't follow their duty to investigate once they are made aware that potential harassment under the law has occurred.

[19] Summary Judgment Order at pg. 9, lns. 14-18.

[20] Summary Judgment Order at pg. 8 ln. 28-pg. 9 ln. 1.

second incident was significantly less severe, lasting only three or four minutes."[21]

This statement is clearly a finding of fact for Cosmopolitan and is clearly looking at the evidence in a light most favorable to Cosmopolitan, *not* Hale.

After all if Cosmopolitan had done a proper investigation and taken voluntary statements from Hale and the other individuals who were deposed by Hale's attorney, they should have trespassed Sherman from the property permanently and the Hale would *not* have been subjected to harassment the second time because Sherman would have not had access to the property and had the opportunity to again confront Hale and subject her to harassment.

As set forth above, "[w]orkers should not be required to run a gauntlet of sexual abuse in return for the privilege of being allowed to work and make a living. *Henson, supra,* 682 F2d at 902.

But by Cosmopolitan choosing to allow Sherman back on the property, they chose to take the wealth and celebrity that he would bring to their business over their obligation to provide a safe environment free of sexual abuse for its employees.

The ninth circuit court of appeals recently revisited the issue of what an employer's liability is based on their response to an act of sexual harassment in the workplace in the case of *Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643 (9th Cir. 2021).

> In *Fried*, Fried a salon manicurist-employee received an unwanted proposition for sex by a male customer while at work. *Id.* at 646. Fried reported the unwanted sexual advance to his manager and explained that he no longer felt comfortable interacting with the customer. *Id.* According to the Fried, the manager nevertheless directed him to complete the pedicure service with the customer. *Id.* The Fried court held that the district court erred by ruling on summary judgment, as a

---

[21] Summary Judgment Order at pg. 9, lns. 4-5.

matter of law, that the employer's response to the employee's report of the customer's harassment did not create a hostile work environment. *Id.* at 652. The Fried court reasoned that the manager's response effectively condoned the customer's unwanted sexual advance and conveyed to the employee that he was expected to tolerate the harassment as part of his job. *Id.*

While the case at bar is a little bit different than *Fried* because of the fact that Cosmopolitan did trespass Sherman from the premises after the first incident, it is still clear that Cosmopolitan's overall response to Hale's complaints of sexual harassment were inadequate and thus arguably created a hostile work environment and thus the district court's grant of summary judgment should be reversed on that basis alone.

As set forth above, while Cosmopolitan did initially trespass Sherman from property, the trespass was lifted after a day which allowed Sherman to harass Hale a second time on February 6th.

But further and maybe more importantly, Cosmopolitan never investigated any of Hale's complaints of being sexually harassed by Sherman. This is even though Bentley viewed the harassment, her attorney wrote a letter to Cosmopolitan making them aware of the first incident of harassment, Hale filed a complaint with the NERC regarding the first incident and Hale emailed Gorman after the second incident outlining what happened in both incidents.

This was on top of the crass comment by Logue that being subjected to Sherman calling her a "bitch" is just part of the business and harassment that Hale just has to tolerate as part of the job.

///

///

///

Thus a reasonable jury could and probably would find the inadequacy of

Cosmopolitan's investigation created a hostile work environment for Hale.

**D.    The District Court Erred in Finding there was No Issue of Material Fact for Trial to as to Whether Hale was Subjected to Unlawful Retaliation by Cosmopolitan.**

Title VII prohibits actions taken against an employee in retaliation for activities protected under Title VII. *42 U.S.C.* §2000e-3(a). Employees subjected to adverse employment actions because they lodged complaints of sexual harassment can also raise a retaliation claim under Title VII. See *Brooks v. City of San Mateo*, 229 F3d 917, 928 (9th Cir. 2000).[22]

To establish a prima facie case of retaliation an employee must show that:

- plaintiff engaged in a protected activity;
- the employer subjected plaintiff to an adverse employment action; and
- a causal link exists between the protected activity and the employer's action. *Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F3d 493, 506 (9th Cir. 2000); *see also Yartzoff v. Thomas*, 809 F.2d 1371, 1375 (9th Cir. 1987).

Under the first prong, Title VII protects employees who: make a charge, testify, assist or participate in any manner in proceedings or hearings under the statutes; or oppose acts made unlawful by the statutes. *42 USC* §2000e-3(a).

Here Cosmopolitan is not contesting (nor did the district court dispute in its order granting summary judgment) the fact that Hale engaged in protected activity when she had her attorney write a letter to Cosmopolitan on January 16, 2018 outlining what occurred on January 10, 2018 [ER-38, Hale Aff. ¶12; ER-58, 120-122, Balaban Aff. . ¶10, Ex. 8], submitted an Intake Inquiry Form to the NERC on January 18, 2018 notifying them as to what had occurred on January 10, 2018,

---

[22] Title VII allows employees to freely report actions that they reasonably believe are discriminatory, even if those actions are in fact found to be lawful. *Moyo v. Gomez*, 40 F.3d 982, 985 (9th Cir. 1994).

[ER- 38, 41-42, Hale Aff. ¶13, Ex. 1] or emailed Gorman on February 7, 2018 about her confrontations with Sherman on January 10, 2018 and February 6, 2018. [ER-38, 45-48, Hale Aff. ¶16, Ex. 3]

Making a complaint for discrimination/harassment under Title VII would qualify as protected activity and thus satisfy the first prong of the analysis.

Hale must next show as part of her prima facie case that she suffered some adverse employment action, occurring subsequent to or contemporaneously with the employee's exercise of the protected rights. *42 U.S.C.* §2000e-3(a).

For purposes of a retaliation claim, a challenged action must be "materially adverse," meaning that it would dissuade a reasonable worker from exercising protected rights. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *see also Ray v. Henderson*, 217 F.3d 1234, 1242-43 (9th Cir. 2000) (describing an adverse employment action as "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity"); *Xing Xing Lin v. Potter*, No. C 10- 03757 LB, 2011 WL 233053, at *11 (N.D. Cal. Jan. 22, 2011)(noting that the standard for "materially adverse employment decision" in the retaliation context is even lower than that required for a Title VII discrimination claim).

Notably, the Ninth Circuit takes "an expansive view of the type of actions that can be considered adverse employment actions." *Ray*, 217 F.3d at 1241. Less severe actions can dissuade a reasonable employee from making a charge of discrimination thus affecting the terms and conditions of employment. *Giovanetti v. Trustees of California State University (Humboldt State University)*, No. 04-cv-5514, 2007 WL 9735004, at *2 (N.D. Cal. Sept. 5, 2007).

Hale claims the following adverse employment actions:

1.   After reporting the incidents Cosmopolitan retaliated against Hale by almost completely removed Plaintiff from craps, her regular game.

Where prior to reporting the incidents Plaintiff worked craps four or five times a week, after she reported the incidents she was lucky to work craps once or twice a month. [ER 38-39, 51-52, Hale Aff. ¶18, Ex. 5.]

2.    Defendant starting harassing Plaintiff about taking her FML including accusing her of taking FML days on Fridays a lot and questioning whether these requests were legitimate even though her doctor approved it due to her incidents. Cosmopolitan made her recertify her FML in April 2018 even though her prior FML certification should have been good until June 2018. [ER 39, 51-52, Hale Aff. ¶19, Ex. 5.]

3.    In addition Cosmopolitan tried to write Plaintiff up for missing time that should have been covered under her FML. [ER 39, 53-54, Hale Aff. ¶20, Ex. 6.]

4.    Finally, Hale wanted to take personal leave to visit her elderly mother out of town who had an aneurysm and even though Defendant eventually let her use her personal leave for the visit, they originally were forcing her to use her FML. [ER 39, 55-56, Hale Aff. ¶21, Ex. 7.]

As to the first adverse employment, on summary judgment the district court was supposed to accept the non-moving party's testimony and make all reasonable inferences in support thereof.

As set forth above, prior to the incident Hale work four or five times a week, after she reported the incidents she was lucky to work craps once or twice a month. While this is not an exact number it definitely supports that after reporting the incidents, Plaintiff was put on craps a lot less than before. This is supported by Frank Acker testimony that Hale was taken out of dice way more often after the incident but he didn't know why and couldn't give an exact number of times she

was there after the incident. [ER-65-66, Acker Depo. 53:1-12, 53:14-54:19.]

There is no reason Hale would lie about this and Acker wouldn't support it if it wasn't true. They both had personal knowledge of the event since Plaintiff knows where she worked and Acker observed this.

Although Cosmopolitan is saying that the game assignment are generated by computer program[23], they have presented no evidence to verify that just because the program might say she was assigned to craps a certain day, that Hale actually worked in craps that day. Thus Cosmopolitan has presented *no* evidence that what Hale says it not true, ie., that after reporting the incidents she was almost completely removed from craps.

Further this was an adverse employment action because although employees might *not* be assigned to a certain game a hundred percent of the time, the fact that craps was Hale's regular game gave her a legitimate expectation that she would be assigned to craps and thus might have dissuaded her from reporting the harassment if she knew it would result in the change of her regular game. *See Burlington Indus., Inc.,* 524 U.S. at 761 ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.")."

Here when looking at the evidence in a light most favorable to Hale and making all reasonable inferences for Hale, it would be reasonable to conclude that reassignment away from crap with significantly different responsibilities was an adverse employment action. Thus the district court finding that "no adverse employment action occurred as to Hale's casino floor reassignments for the Sherman incidents" was in error and should be overturned.

---

[23] ER 138-149, Exhibit R, Game Assignments.

As to the second adverse action, although "Cosmopolitan is statutorily permitted to request recertification if 'circumstances changed significantly'" pursuant to *29 C.F.R.* §825.308(c)(2) as stated in the district courts summary judgment order[24], there is an issue of material fact as to whether this occurred because there was a legitimate business reason for it (her circumstances changed significantly) or whether it was because of the Sherman incidents and the reporting thereof.

The evidence supports that Hale's doctor approved the Fridays off due to her incidents with Sherman so it is least reasonable to conclude that the reason the recertification was requested was because of the Sherman incidents and the reporting thereof.

Further having Hale recertify her FML in April of 2018 instead of June or 2018 was adverse to her because she lost over two months of certification since she had to recertify in April instead of June. *See* probable end date of leave in Certification of June 20, 2018 and the start date in the Recertification of April 2, 2018, more than two month before the probable end date of June 20, 2018. [ER-150-152, Exhibit U, Certification and ER 153-157, Exhibit T, FMLA Recertification.]

Thus when looking at the evidence in a light most favorable to Hale and making all reasonable inferences for Hale, it would be reasonable to conclude that making Hale recertify her FML early was retaliatory and the district court's finding to the contrary was in error.[25]

---

[24] Summary Judgment Order at pg. 7, lns. 9–10.

[25] Although Cosmopolitan claimed in its motion for summary judgment that Sun Life Financial, who administered their FMLA, requested the recertification without its input, this seems unlikely since employers are intimately involved in FMLA administration since they are ultimately responsible for the same.

As to the third adverse action, although the time was ultimately covered under her FML after Hale questioned it, because it happened soon after reporting the incidents it was likely related. The district court claims that this was conclusory and unsupported by any additional factual data but what more factual data is needed. The fact that Cosmopolitan wrote Hale up for time that should have been covered by FML indicates that they were wrong to write her up in the first place and this could have been done because Hale reported the Sherman incident and although Hale caught it and it was corrected, still doesn't change the fact that it could have been done for a retaliatory reason. This is especially the case when looking at the evidence in a light most favorable to Hale and making all reasonable inferences for Hale

Finally as to the fourth adverse action, Hale never sought to take FML to visit her mother who had an aneurysm. Plaintiff always planned to take personnel leave and it was Cosmopolitan that tried to turn it into a FML. There was no basis for her doctor to approve it as a FML and although Defendant ultimately approved it as a personal leave of absence, their initial stance was arguably based on retaliation for reporting the incidents.

The relative novelty of their theory of retaliation does not preemptively defeat their claim. The liberal thrust of what may be considered a materially adverse employment action is precisely that no "act will be preemptively rejected" and that it will ultimately "be up to the jury to decide whether a specific act 'would have been materially adverse to a reasonable employee.'" *Giovanetti*, 2007 WL 9735004, at *3 (quoting *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68).

Thus these were arguably adverse employment actions under *42 USC* §2000e-3(a). At least when looking at these actions in a light most favorable to Hale, not weighing the evidence and making all reasonable inferences for Hale,

these actions dissuaded Hale and would have dissuade a reasonable worker from filing and pursuing the sexual harassment complaints.

Finally, "causation may be established based on the timing of the relevant actions." *Passantino*, 212 F.3d at 507; *Yartzoff,* 809 F.2d at 1375-76. "Specifically, when adverse employment decisions are taken within a reasonable period of time after complaints of discrimination have been made, retaliatory intent may be inferred." *Id.*

"Moreover, we have held that evidence based on timing can be sufficient to let the issue go to the jury, even in the face of alternative reasons proffered by the defendant." *Passantino*, 212 F.3d at 507; *Strother v. Southern California Permanente Group*, 79 F.3d 859, 870-71 (9th Cir. 1996).

Here Hale was taken off craps almost completely shortly after her attorney reported the first incident to Cosmopolitan, she filed an intake with NERC in mid-January 2018 and she made her report to Gorman about the incidences at the start of February 2018. Asking Hale to recertify her FML happened roughly two months after in April 2018 and Cosmopolitan trying to write Hale up for missing time that should have been covered under her FML happened in late April 2018.

Finally initially asking Hale to use FML to visit her elderly mother out of town happened roughly a year later in March of 2019.

Thus at a minimum the issue should go to the jury on the first three adverse employment actions since they occurred within a reasonable period of time after the complaints of discrimination.

## VIII.

## CONCLUSION

As set forth above, Hale experienced a hostile work environment based on her sex when she was accosted by Sherman on January 10, 2018 and February 6, 2018 and once she reported these incidents, she was retaliated against by Cosmopolitan as mentioned above. Further the conduct of Sherman was such that

a reasonable jury could conclude that it was extreme and outrageous and that it caused Hale to suffer severe emotional distress.

Thus it is incumbent for this court to allow the case to proceed to trial.

On summary judgment and a motion to dismiss the court is required to look at the evidence in the light most favorable and make all reasonable inferences in favor of the non-moving party. It is not the court's job to weight the evidence and decide issues of material fact themselves, that is what a jury if for. Likewise a judge is supposed to accept facts as true if they are plausible.

Employees should have the same rights as employers but unfortunate in the District of Nevada, judges view summary judgment and motions to dismiss as the preferred method of disposing of case and instead of looking at the evidence and facts plead in the light most favorable and making all reasonable inferences in favor of the non-moving party employee, the evidence and facts plead are actually looked at in the light most favorable and reasonable inferences are made in favor of the moving party employer or individual defendant.

This accounts for the high percentage of cases in which motions for summary judgment and motions to dismiss are granted in the District of Nevada and the almost non-existent amount of cases that go to trial these days in the District of Nevada.

As an employee Hale should not be harassed and disrespected like she was as a condition of employment. That is why we have laws to protect employees against harassment in the workplace including harassment by patrons or customers. Unfortunately the judges that make up the District of Nevada including the judge in this case, side with the hotels, casinos and their patrons in most cases.

This being the case, Hale respectfully requests that the Court of Appeals overturn the district court's dismissal of her intentional infliction of emotional distress and its grant of summary judgment on Hale's hostile environment sexual

harassment and retaliation claims, and allow the matter to proceed to a jury trial on its merits.  As set forth above, Hale does not wish to appeal her claims for negligent hiring, supervision and retention and sex/gender discrimination.


DATED: 04/18/2023               LAW OFFICES OF MICHAEL P.
                                BALABAN


                    BY:  /s/ Michael P. Balaban
                         Michael P. Balaban
                         LAW OFFICES OF MICHAEL P.
                         BALABAN
                         10726 Del Rudini Street
                         Las Vegas, NV  89141

## STATEMENT OF RELATED CASES

Appellant is aware of no related cases pending before this court.

## CERTIFICATE OF COMPLIANCE

Pursuant to F.R.A.P. 32(a)(7)(B)(i) and Circuit Rule 32-1, I certify that this Brief of Appellants is proportionately spaced, has a typeface of 14 points and contains 13,827 words.

## CERTIFICATE OF SERVICE

I hereby certify that pursuant to Circuit Rule 25-5(f) a true and correct copy of the foregoing document was electronically served via the Appellate ECF system to the following person:

Lisa A. McClane, Esq.
Daniel I. Aquino, Esq.
*Attorneys for Defendant NV Property 1, LLC dba*
*The Cosmopolitan of Las Vegas*

Mark E. Ferrario, Esq.
Jason Hicks, Esq.
*Attorneys for Defendant Richard Sherman*

DATED: __04/18/2023__          __/s/ Michael P. Balaban_____
                                              Michael P. Balaban