No. 22-16274

# In the
# United States Court of Appeals
# For the Ninth Circuit

TONYA HALE,
*Plaintiff – Appellant,*
v.
NV PROPERTY 1, LLC, DBA;
The Cosmopolitan of Las Vegas; et. al.,
*Defendants – Appellees*

On Appeal from the United States District Court for the District of Nevada
Case No. 2:19-cv-780-JCM-VCF

Honorable James C. Mahan, Presiding

## RICHARD SHERMAN'S ANSWERING BRIEF

GREENBERG TRAURIG, LLP
JASON K. HICKS, Esq. (Nevada Bar No. 13149)
ELLIOT T. ANDERSON, Esq. (Nevada Bar No. 14025)
10845 Griffith Peak Dr., Suite 600
Las Vegas, NV  89135
702-792-3773
702-792-9002 (fax)
*Attorneys for Defendant – Appellee Richard Sherman*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Defendant-Appellee Richard Sherman is an individual and need not file a corporate disclosure statement.

July 20, 2023

Respectfully submitted,
GREENBERG TRAURIG, LLP

By: <u>/s/ *Jason Hicks*</u>
*Attorneys for Defendant - Appellee*
*Richard Sherman*

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................1

STATEMENT OF JURISDICTION..................................................2

ISSUES ON APPEAL .....................................................................2

STATEMENT OF THE CASE..........................................................3

    I.    The Litigation .................................................................3
    II.   The District Court Dismisses All Claims Against Mr. Sherman. .........4
    III.  The Case Proceeds Until the District Court Enters Summary
          Judgment for Cosmopolitan. ..............................................5

ARGUMENT ...................................................................................7

    I.    Standard of Review .......................................................7
    II.   The District Court Properly Dismissed Appellant's Intentional
          Infliction of Emotional Distress Claim against Mr. Sherman..............7

          A.   Under Well-Settled Nevada Law, Alleged Insults,
                Unkind Conduct, and Indignities Do Not Rise to
                "Extreme and Outrageous" Conduct.........................................8
          B.   Ms. Hale did not plausibly plead "severe or extreme
                emotional distress" or that it was attributable to Mr.
                Sherman's alleged words. .........................................17

    III.  This Court Should Disregard Appellant's Motion to Amend
          Argument. ..............................................................19

CONCLUSION ...............................................................................24

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Alam v. Reno Hilton Corp.*,
   819 F. Supp. 905 (D. Nev. 1993)....................................................9, 11, 13, 18, 19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................................7

*Badgley v. United States*,
   957 F.3d 969 (9th Cir. 2020) .............................................................................21

*Balistreri v. Pacifica Police Dep't*,
   901 F.2d 696 (9th Cir. 1990) ...............................................................................7

*Beaudoin v. Hartford Acc. & Indem. Co.*,
   594 So. 2d 1049-50 (La. Ct. App.), *writ denied*, 598 So. 2d 356
   (La. 1992)...........................................................................................................12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..............................................................................................7

*Branda v. Sanford*,
   97 Nev. 643, 648, 637 P.2d 1223, 1226-27 (1981).   ...............................14, 15

*Brown v. Electronic Arts, Inc.*,
   724 F.3d 1235 (9th Cir. 2013) .............................................................................7

*Candelore v. Clark Cnty. Sanitation Dist.*,
   752 F. Supp. 956 (D. Nev. 1990), *aff'd*, 975 F.2d 588 (9th
   Cir.1992) ...........................................................................................................10

*Candelore v. Clark Cnty. Sanitation Dist.*,
   975 F.2d 588 (9th Cir. 1992) ......................................................................11, 13

*Chowdhry v. NLVH, Inc.*,
   109 Nev. 478, 482–83, 851 P.2d 459, 462 (1993)............................................18

*Farr v. United States*,
   990 F.2d 451 (9th Cir. 1993) ......................................................................14, 20

*Foman v. Davis*,
   371 U.S. 178 (1962)............................................................................................21

*Garity v. APWU Nat'l AFL-CIO*,
   2012 U.S. Dist. LEXIS 83760, 2012 WL 2273429 (D. Nev. June
   18, 2012), *aff'd sub nom.* 655 F. App'x 523 (9th Cir. 2016) .............................12

i

*Goodwin v. Exec. Tr. Servs., LLC*,
   680 F. Supp. 2d 1244, 1256 (D. Nev. 2010)......................................................18

*Hirata v. S. Nevada Health Dist.*, 2014 U.S. Dist. LEXIS 136166, *13
   (D. Nev. Sept. 26, 2014) ....................................................................................19

*J.D.H. v. Las Vegas Metro. Police Dep't*,
   2016 U.S. Dist. LEXIS 130861, 2016 WL 5346068 (D. Nev. Sept.
   23, 2016) ............................................................................................................14

*Jojola v. American Pac. Corp.*,
   2014 U.S. Dist. LEXIS 161315, 2014 WL 6473637 (D. Nev. Nov.
   18, 2014), *aff'd*, 678 F. App'x 618 (9th Cir. 2017).............................................12

*King v. Burris*,
   588 F. Supp. 1152 (D. Colo. 1984)....................................................................12

*Lockman Found. v. Evangelical All. Mission*,
   930 F.2d 764 (9th Cir. 1991) ..............................................................................24

*Lopez v. UPS*,
   2009 U.S. Dist. LEXIS 47520, at *13-14, 2009 WL 1422228, at
   *5-6 (D. Nev. Mar. 12, 2009) ...............................................................10, 11, 19

*MacDermid v. Finl. Serv*,
   488 F.3d 721 (6th Cir. 2007) ................................................................................9

*Maduike v. Agency Rent-A-Car*,
   114 Nev. 1, 953 P.2d 24 (1998).........................................................8, 9, 11, 16

*McGee v. CitiMortgage*,
   2014 U.S. Dist. LEXIS 127401, 2014 WL 4541030 (D. Nev. Sept.
   11, 2014) ............................................................................................................20

*Miller v. Jones*,
   114 Nev. 1291, 970 P.2d 571 (1998).................................................................... 8

*Nelson v. City of Las Vegas*,
   99 Nev. 548, 665 P.2d 1141 (1983)....................................................................18

*In re O'Brien*,
   312 F.3d 1135 (9th Cir. 2002) ............................................................................21

*Perfect 10 v. Visa Int'l Serv. Ass'n*,
   494 F.3d 788 (9th Cir. 2007) ...........................................................................7, 8

*Refai v. Lazaro*,
   614 F. Supp. 2d 1103 (2009) ..............................................................................17

ii

*Rich v. Fox News Network, LLC*,
939 F.3d 112 (2d Cir. 2019) ...................................................................8

*Robert P. Mosier, Grp. Inc. v. Stonefield Josephson, Inc.*,
815 F.3d 1161 (9th Cir. 2016) ...............................................................21

*Schneider v. TRW, Inc.*,
938 F.2d 986 (9th Cir. 1991) .................................................................12

*Shufelt v. Just Brakes Corp.*,
2017 U.S. Dist. LEXIS 11034 (D. Nev. Jan. 25, 2017)......................16

*Shufelt v. Just Brakes Corporation*,
2017 WL 379429 (D. Nev. Jan. 25, 2017) ...........................................11

*Steiner v. Showboat Operating Co.*,
25 F.3d 1459 (9th Cir. 1994) .................................................................14

*Switzer v. Rivera*,
174 F. Supp. 2d 1097 (D. Nev. 2001)......................................................9

*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*,
368 F.3d 1053 (9th Cir. 2004) ...............................................................24

*Wright v. Riveland*,
219 F.3d 905 (9th Cir. 2000) .................................................................17

## Rules

Fed. R. Civ. P. 12(b)(6)............................................................................7

Fed. R. Civ. P. 15(a)(1)(B) .....................................................................21

LR 15-1(a).................................................................................................20

## Other Authorities

RESTATEMENT (SECOND) OF TORTS §§ 41, 46 (Am. Law Inst. 1965)....10, 11, 13, 18

## **INTRODUCTION**

The district court correctly dismissed Appellant Tonya Hale's single claim for intentional infliction of emotional distress against Appellee Richard Sherman. This Court should affirm that order of dismissal and subsequent judgment in Mr. Sherman's favor.

Ms. Hale alleged as the basis of her emotional distress claim against Mr. Sherman nothing more than supposed rude language and innocuous behavior that Ms. Hale found annoying. Ms. Hale, who was at the time a Table Games Supervisor at the Las Vegas Strip hotel and casino, Cosmopolitan of Las Vegas ("Cosmopolitan"), alleged that Mr. Sherman, who was a customer, told her that she was wasting his time, that someone other than Ms. Hale ought to oversee the craps game he was participating in, and that Mr. Sherman used the "F-word" in stating he would "have her job" for not letting him bet over the table limit. Ms. Hale did not allege (and could not have) that Mr. Sherman ever placed her in any apprehension of physical contact. Thus, Ms. Hale at most alleged that Mr. Sherman directed mild profanity towards her in connection with her job competency and, at worst, an insult. Despite the mundane allegations, Ms. Hale alleged that she suffered indignity, emotional distress, humiliation, and related damages as a result.

1

Nevada law does not recognize a claim for intentional infliction of emotional distress premised upon mere insults, annoyances, unkind conduct, or garden variety emotional distress as was alleged by Ms. Hale. The district court correctly applied well-settled Nevada law and dismissed her claim against Mr. Sherman. Ms. Hale has failed to demonstrate any error in the district court's order warranting reversal. This Court should affirm the district court's order of dismissal and judgment in Mr. Sherman's favor.

## STATEMENT OF JURISDICTION

Mr. Sherman does not contest Ms. Hale's jurisdictional statement.

## ISSUES ON APPEAL

1.      Did the district court err in dismissing Ms. Hale's claim for intentional infliction of emotional distress predicated upon mere unkind behavior and insults and entering judgment in Mr. Sherman's favor?

ACTIVE 688951711v1

## STATEMENT OF THE CASE

### I.    THE LITIGATION

Ms. Hale sued Mr. Sherman over two verbal exchanges at the Cosmopolitan which allegedly took place in January and February 2018.  ER-6 at ¶¶10, 17.  Ms. Hale contends that in January 2018, while she was working on the casino floor, Mr. Sherman was gambling with friends. ER-6 at ¶ 11. According to the Complaint, Mr. Sherman took issue with Ms. Hale not allowing him to bet over the table limit, which is apparently against Cosmopolitan policy, and asserted that Mr. Sherman told her that if "she couldn't handle this then they should get someone who could."  ER-6 at ¶ 13.  While Ms. Hale inferred some gender and/or racial-based motive in this alleged comment, she provided no specifics to support her speculation.  *See id*.[1]  The Complaint alleged that Mr. Sherman stayed for another 15 to 25 minutes after that alleged comment before leaving the Cosmopolitan on his own accord, without further incident.  ER-6 at ¶ 13.

The Complaint alleged that Mr. Sherman returned to the Cosmopolitan in February 2018, while Ms. Hale was working, and that Mr. Sherman verbally harassed her while he gambled.  ER-6 at ¶ 17.  In particular, the Complaint alleged

---

[1]Ms. Hale, who is a Caucasian female, later admitted at her deposition that she has no evidence that Mr. Sherman, who is an African American male, said or even insinuated any racial or gender-based comments.  SER-RS-57-58 at 236:11-237:5; *infra*, at III, B.

ACTIVE 688951711v1

that Mr. Sherman said to Ms. Hale, "mother f\*\*ker, f\*\*k I'll have your job, you don't tell me what to do" when she told him he could not bet over the table limit. ER 18-19 at ¶¶ 18-19.[2]  According to the Complaint, Mr. Sherman stated that Ms. Hale was "wasting his time" and asked her why she was "doing this."  ER 18-19 at ¶ 19.  This second interaction apparently ended at that point, without further incident.  *See* ER 18-19.  That is the extent of Mr. Sherman's alleged involvement in the underlying facts as set forth in the Complaint.

Ms. Hale originally sued Mr. Sherman for "verbal assault" and intentional infliction of emotional distress.  ER-13-14, ¶¶ 59-70.  Ms. Hale also asserted various workplace claims against her employer, the Cosmopolitan.  ER-6, 8-14 ¶¶ 22-58, 65-70.  Mr. Sherman timely moved to dismiss both of the claims against him.  ER-18.  In her opposition, Ms. Hale conceded dismissal of her "verbal assault" claim against Mr. Sherman.  ER-23.  This left only Ms. Hale's claim for intentional infliction of emotion distress against him.[3]

## II.  <u>THE DISTRICT COURT DISMISSES ALL CLAIMS AGAINST MR. SHERMAN.</u>

The district court entered an order dismissing Ms. Hale's remaining claim against Mr. Sherman for intentional infliction of emotional distress.  ER-18-24.  In

---

[2]Ms. Hale later testified to an entirely different (and far tamer) sequence of these events, meaning her complaint was wrong.  *Infra*, at III, B.

[3]The Cosmopolitan also moved to dismiss Ms. Hale's claims for intentional infliction of emotional distress and negligent hiring, supervision, and retention.  ER-20, 22.

4

doing so, the district court ruled that Mr. Sherman's alleged conduct, even taken as true at the dismissal stage, did not qualify as intentional infliction of emotional distress as a matter of Nevada law. ER-23. In particular, the district court determined that Ms. Hale's allegations as to Mr. Sherman allegedly occurred over two 15-20-minute timespans and amounted to mere insults, indignities, or threats.[4] ER-23-24. And, Mr. Sherman did not make sexual advances or related comments to Ms. Hale. ER-24 at 6-7. These two alleged, brief interactions came weeks apart. ER-6-7 ¶¶ 11, 17. The district court concluded that Ms. Hale's allegations amounted to, at worst, rudeness and insensitivity, which did not suffice as a matter of law. ER-23-24. The district court dismissed Mr. Sherman and entered judgment in his favor.

## III. THE CASE PROCEEDS UNTIL THE DISTRICT COURT ENTERS SUMMARY JUDGMENT FOR COSMOPOLITAN.

With Mr. Sherman dismissed, the case proceeded between Ms. Hale and the Cosmopolitan. The district court ultimately entered summary judgment in the Cosmopolitan's favor on all of Ms. Hale's remaining claims. ER-25-34. This appeal followed.

---

[4]The length of the second "incident" was actually three or four minutes, as testified to by Ms. Hale. *Infra*, at III, B.

## <u>SUMMARY OF THE ARGUMENT</u>

This Court should affirm the district court's dismissal of Ms. Hale's single claim for intentional infliction of emotional distress against Mr. Sherman and judgment in his favor. Ms. Hale's allegations, even taken as true at the pleading stage, do not amount to the type of "extreme and outrageous" conduct that is "outside all possible bounds of decency" and regarded as "utterly intolerable in a civilized community" as is required by Nevada law. At most, Ms. Hale pleaded mere insults, annoyances, and unkind conduct. But Nevada courts have long held that individuals "must necessarily be expected and required to be hardened . . . to occasional acts that are definitely inconsiderate and unkind" such as, in this case, isolated profanity and negative comments about one's job aptitude between two strangers. The district court correctly found that these allegations do not plausibly state a claim for intentional infliction of emotional distress.

ACTIVE 688951711v1

# **ARGUMENT**

## I.   STANDARD OF REVIEW

This Court reviews de novo a district court's grant of a motion to dismiss under Rule 12(b)(6).  *See, e.g.*, *Brown v. Electronic Arts, Inc.*, 724 F.3d 1235, 1240 (9th Cir. 2013).   This Court may "affirm on any ground supported by the record even if the district court did not consider the issue."  *See Perfect 10 v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 794 (9th Cir. 2007).

A motion to dismiss under Rule 12(b)(6) is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  Although the complaint must be read in the light most favorable to the non-moving party, "the court need not accept conclusory allegations of law or unwarranted inferences." *Perfect 10*, 494 F.3d at 794.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

## II.   THE DISTRICT COURT PROPERLY DISMISSED APPELLANT'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM AGAINST MR. SHERMAN.

To state a plausible claim for intentional infliction of emotional distress, a plaintiff must assert facts demonstrating "(1) extreme and outrageous conduct on

the part of the defendant; (2) intent to cause emotional distress or reckless disregard for causing emotional distress; (3) that the plaintiff actually suffered extreme or severe emotional distress; and (4) causation." *Miller v. Jones*, 114 Nev. 1291, 970 P.2d 571, 577 (1998).  Ms. Hale did not plausibly plead facts showing she was subjected to "extreme and outrageous" conduct or that she suffered "severe emotional distress" of the kind required by the case law.  Nor did she plead facts that plausibly connected her alleged damages to Mr. Sherman's alleged words.[5]

**A.**     **Under Well-Settled Nevada Law, Alleged Insults, Unkind Conduct, and Indignities Do Not Rise to "Extreme and Outrageous" Conduct.**

Nevada law requires and expects people "to be hardened . . . to occasional acts that are definitely inconsiderate and unkind." *Maduike v. Agency Rent-A-Car*, 114 Nev. 1, 4, 953 P.2d 24, 26 (1998).  "Extreme and outrageous" conduct is therefore a necessarily high bar to one's ability to fashion a lawsuit out of mean words. *See, e.g.*, *Rich v. Fox News Network, LLC*, 939 F.3d 112, 122 (2d Cir. 2019) ("The standard of outrageous conduct is strict, rigorous and difficult to

---

[5]The district court found as a matter of law that the alleged conduct was not extreme and outrageous.  Thus, it did not reach whether Ms. Hale's alleged injuries are the kind recognized by this claim, or whether she plausibly plead facts connecting the alleged words to her alleged injuries.  Mr. Sherman briefed those issues, which provide alternative grounds for dismissal, and so reasserts them here. *Perfect 10*, 494 F.3d at 794 (noting this Court may "affirm on any ground supported by the record even if the district court did not consider the issue.").

8

satisfy. . . "); *MacDermid v. Finl. Serv*, 488 F.3d 721, 732 (6th Cir. 2007) ("To be sure, Tennessee's outrageous conduct standard, as in many states, is a formidable one."). Actionable conduct must be the kind that is "outside all possible bounds of decency" and "utterly intolerable in a civilized community." *Switzer v. Rivera*, 174 F. Supp. 2d 1097, 1108 (D. Nev. 2001) (quoting *Maduike*, 114 Nev. at 4, 953 P.2d at 26). It must be of the kind that "no reasonable person could be expected to endure[]." *Alam v. Reno Hilton Corp.*, 819 F. Supp. 905, 911 (D. Nev. 1993)).

Ms. Hale did not plead "utterly intolerable" and uncivilized behavior that is "outside all possible bounds of decency" and which "no reasonable person could be expected to endure." Instead, Ms. Hale alleged only that (1) Mr. Sherman told her she was "wasting his time" by not allowing him to bet over the table limit, (2) someone else should apparently handle the craps game, and (3) that Mr. Sherman used the "F-word" in stating she should not tell him what to do and that he would "have her job." ER-6-7 at ¶¶ 12-13, 18-19.[6] Thus, Mr. Sherman allegedly directed profanity and, at worst, mild insults concerning her job performance against Ms. Hale. *Id.* And again, this allegedly occurred on two brief, isolated occasions that came weeks apart, and on a casino floor where "bad beats" often go hand-in-hand with "bad words," which is all too familiar to table games workers.

---

[6]It bears noting that Ms. Hale did not lose her job. In fact, she remained at the Cosmopolitan and received raises. SER-RS-58 at 237:18-19

9

Nevada law does not recognize such statements as sufficiently "extreme or outrageous." Rather, "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" like alleged here, fall short. *Candelore v. Clark Cnty. Sanitation Dist.*, 752 F. Supp. 956, 962 (D. Nev. 1990), *aff'd*, 975 F.2d 588 (9th Cir. 1992) (quoting Restatement (Second) of Torts § 41 and Comments thereto (Am. Law. Inst. 1965)).

Courts interpreting Nevada law have rejected far more severe allegations as insufficiently "extreme and outrageous." *Lopez v. UPS*, 2009 U.S. Dist. LEXIS 47520, at *13-14, 2009 WL 1422228, at *5-6 (D. Nev. Mar. 12, 2009). For example, the U.S. District Court for the District of Nevada rejected liability for severe racial epithets and threatened physical violence over several years. *Lopez*, 2009 U.S. Dist. LEXIS 47520, *13, 2009 WL 14222288 (noting Plaintiff was called a "Wetback" and "Punk Ass Bitch."). Racial epithets and threats of physical violence over several years constitutes objectively far more extreme and offensive conduct than that alleged by Ms. Hale. Yet, the court in *Lopez* ruled that the plaintiff "at most . . . offered evidence that he was subjected to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities by his co-workers on a sporadic basis." *Id.* at *15. The *Lopez* plaintiff presented no evidence that the defendant engaged in conduct "outside all possible bounds of decency" and regarded as "utterly intolerable in a civilized community." *Id.*

10

In contrast, Ms. Hale asserted far more mild allegations. Mr. Sherman allegedly told Ms. Hale that she "wasting my time" and that "I'll have your job," coupled with the "F-word." These statements alone, even with profanity, cannot objectively be considered as so outrageous, and so unreasonable, that they go "beyond all possible bounds of decency" and are "atrocious and utterly intolerable" in society. *Alam*, 819 F. Supp. at 911 (citing Restatement (Second) of Torts § 46, cmt. d (1965)). The law requires Ms. Hale to be hardened to deal with the type of interactions and occasional unkindness she alleges occurred.

The district court agreed, finding in relevant part as follows:

> Hale argues that Sherman's verbal statements are extreme and outrageous conduct proving intentional infliction of emotional distress. (ECF No. 16 at 7).

> The court disagrees. Instead, the court finds that Sherman's conduct is akin to insults, indignities, or threats, not conduct which is outside all possible bounds of decency or utterly intolerable in a civilized community. *See Candelore*, 975 F.2d at 591; *Alam v. Reno Hilton Corp.*, 819 F. Supp. 905, 911 (D. Nev. 1993); *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (1998).

> First, Sherman's conduct occurred on two fifteen to twenty-five minute incidents. (ECF No. 1). Interacting with a rude and aggressive individual in such a limited capacity is something that persons are necessarily expected and required to be hardened to. *Maduike*, 953 P.2d at 26. Second, Sherman did not make sexual advances or comments to Hale, which could be considered extreme an[d] outrageous. *See Shufelt v. Just Brakes Corporation*, 2017 WL 379429 (D. Nev. Jan. 25, 2017). Third, while Sherman's threats to have Hale fired and insinuations that Hale should have found an employee who could handle Sherman certainly show rudeness and insensitivity, they do not amount to extreme or outrageous. *See Schneider v. TRW, Inc.*,

11

938 F.2d 986, 992 (9th Cir. 1991). Thus, Hale does not sufficiently allege that Sherman engaged in extreme or outrageous conduct.

ER-23-24 at 6:22-7:12.

The district court correctly applied the law, and its ruling should be affirmed. Reversal would effectively lower the historically high "extreme and outrageous" standard. *Garity v. APWU Nat'l AFL-CIO*, 2012 U.S. Dist. LEXIS 83760, *30, 2012 WL 2273429 (D. Nev. June 18, 2012) (finding that arguably "offensive, inconsiderate, and unkind" acts do not rise to the level of extreme and outrageous conduct unless they exceed "all bounds of decency"), *aff'd sub nom.* 655 F. App'x 523, 525 (9th Cir. 2016); *see also Jojola v. American Pac. Corp.*, 2014 U.S. Dist. LEXIS 161315, *9, 2014 WL 6473637 (D. Nev. Nov. 18, 2014) (dismissing IIED claim where alleged defendant made "unsolicited hostile and sarcastic remarks" motivated by discrimination against females, Native Americans, and Catholics), *aff'd*, 678 F. App'x 618 (9th Cir. 2017); *see also King v. Burris*, 588 F. Supp. 1152, 1154-1157 (D. Colo. 1984) (finding that statements, "damn fat f*g," "fatso," "liar," "I ought to hit you in the mouth," and "why don't you do the game of baseball a favor and resign," and throwing a bottle, as insufficiently outrageous or extreme); *Beaudoin v. Hartford Acc. & Indem. Co.*, 594 So. 2d 1049-50, 1052 (La. Ct. App.), *writ denied*, 598 So. 2d 356 (La. 1992) (affirming insufficient extreme and outrageous conduct finding where supervisor cursed, called woman dumb and stupid, went into violent screaming rages, and called

12

woman fat); *Alam*, 819 F. Supp. at 911 ("Liability [ ] is only found in extreme cases where the actions of the defendant go beyond all possible bounds of decency, is atrocious and utterly intolerable."). If the mere use of the "F-word" in an isolated encounter between strangers is sufficient to state a claim for severe emotional distress, then the floodgates to the courts would spring open with plaintiffs bringing legal claims premised on the rough edges of everyday human interaction. That, of course, is not the intent or purpose behind this claim, which is exactly why courts have repeatedly emphasized the high bar plaintiffs must satisfy.

Ms. Hale's arguments in support of reversal miss the mark. Opening Br., 15-18. First, her arguments largely repeat her insufficient allegations. *Id.* But Nevada law still does not entitle her to relief based on isolated verbal statements, a single (unfulfilled) job threat by a customer, or insults, even if loudly screamed, profane, or rudely delivered. *Id.* at 16. Second, Ms. Hale does not legally resist the key reason she lost below: liability does not extend to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Candelore v. Clark Cnty. Sanitation Dist.,* 975 F.2d 588, 591 (9th Cir. 1992) (quoting Restatement (Second) of Torts § 41 cmt. d). Third, rather than demonstrate any legal error, Ms. Hale asks this Court to rely on later depositions and her own self-serving affidavit that was not before the district court at the time of its ruling. This is improper. *See Farr v. United States*, 990 F.2d 451, 454 (9th Cir. 1993)

("[E]vidence outside the pleadings . . . cannot normally be considered in deciding a 12(b)(6) motion."). Yet, even if this Court did so, this evidence *still* only shows fleeting profanity, insults, and rudeness, none of which is actionable. Opening Br., 16-18.

Ms. Hale contends that *Branda v. Sanford* supports reversal.[7] Opening Br. 18-20 (relying on 97 Nev. 643, 648, 637 P.2d 1223, 1226-27 (1981)). This is the same case she hung her hat on in the district court, and the district court found to be materially distinguishable. ER-23 at 6:7-10 ("Hale cites *Branda v. Sanford*, 637 P.2d 1223 (Nev. 1981), as support that a jury should determine whether Sherman's conduct—verbally accosting Hale—was outrageous using contemporary attitudes and prevailing societal circumstances. [] Hale miscites the court's holding in *Branda*."). The *Branda* court's opinion turned in part on Nevada's liberal notice pleading standard. *Branda*, 97 Nev. at 648, 637 P.2d at 1226-27. But Nevada's

---

[7]Ms. Hale string cites many more factually distinguishable cases with little discussion. Opening Br., at 18-19 ("This holding has been cited by numerous courts with approval in finding that the 'extreme and outrageous' conduct element of a cause of action for IIED was met as a matter of law."). Some, in fact, stand for the opposite proposition. *See*, *e.g.*, *J.D.H. v. Las Vegas Metro. Police Dep't*, 2016 U.S. Dist. LEXIS 130861, at *22-23, 2016 WL 5346068, at *8 (D. Nev. Sept. 23, 2016) ("[N]either Ms. Hernandez nor J.D.H. can maintain her IIED claim."). Special attention is paid to Appellant's reliance on *Steiner v. Showboat Operating Co.*, 25 F.3d 1459 (9th Cir. 1994). Opening Br., 20 (arguing that public humiliation qualifies as extreme and outrageous conduct). Ms. Hale seeks refuge here on inapplicable facts. 25 F.3d at 1466-67 (allowing allegations of "public humiliation of an *employee by her employer*, accomplished through rude,

14

liberal pleading standard does not apply here.  *Supra*, at I; *see also* ER-23 at 6:15-16 ("Here, unlike the state-court plaintiff in *Branda*, Hale must meet the federal pleading standard to survive a motion to dismiss.").

Moreover, the *Branda* plaintiff alleged depraved facts that were objectively far more severe and outrageous.  The plaintiff in *Branda* was a 15-year-old girl at whom the defendant yelled, and called, a "f—k—ing bitch," "f—k—g c—t" and "no lady."  *Branda*, 97 Nev. at 645, 637 P.2d at 1224.  The defendant was also alleged to have directed sexual innuendos towards the minor-plaintiff, and have said, "This is the one I want. This is her."  *Id*.  Pedophilic remarks and profane language directed at a young teenage girl are not comparable to the *non-sexual* language Ms. Hale alleges Mr. Sherman directed towards her, an adult.  Rather, the language Ms. Hale alleges she was subjected to here is limited to Mr. Sherman's act of telling Ms. Hale that if "she couldn't handle this then they should get someone who could" in reference to accepting bets over the table limit, stating "mother f\*\*ker, f\*\*k I'll have your job, you don't tell me what to do[,]" again in reference to betting over the table limit, and, finally, allegedly telling Ms. Hale that she was "wasting his time," asking her "why is she doing this," and "screaming out loud[,] 'Tonya is wasting my time'" before leaving the Cosmopolitan on his own accord.  ER-6-7 at ¶¶ 12-13, 18-19.  Indeed, Ms. Hale voluntarily abandoned her

_____

crude *sexually explicit remarks* and actions" to go before a jury (emphases

verbal assault claim, implicitly conceding that she was never placed in apprehension of physical threat. SER-RS-17 at 91:5-11; SER-RS-18 at 96:2-4; SER-RS-20 at 128:15-17. This concession highlights the mundane nature of the alleged interactions between Ms. Hale and Ms. Sherman.

The only similarities between *Brenda* and the instant case is the perceived status of the defendant, i.e., a celebrity, a label which Ms. Hale anchored her argument to, and that the alleged conduct occurred in the plaintiff's workplace.[8] But these two "factors" are not factors at all in analyzing a claim for intentional infliction of emotional distress. The only inquiry of import is whether the alleged conduct is so "extreme and outrageous" that it falls "outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike*, 114 Nev. at 4, 953 P.2d at 24.

Mr. Sherman's alleged words do not fall "outside all possible bounds of decency" nor is their use "regarded as utterly intolerable in a civilized community" judged from the perspective of the objective reasonable person. *Maduike*, 114 Nev. at 1, 953 P.2d at 26; *Shufelt v. Just Brakes Corp.*, 2017 U.S. Dist. LEXIS 11034, *7 (D. Nev. Jan. 25, 2017). Reasonable minds could not disagree, and this is a determination the court appropriately made at the motion to dismiss stage. *See,*

---

added)).

[8]Mr. Sherman played in the NFL, and Ms. Hale made much about that fact in the proceedings below.

ACTIVE 688951711v1

*e.g.*, *Refai v. Lazaro*, 614 F. Supp. 2d 1103, 1121 (2009) ("The Court determines whether the defendant's conduct may be regarded as extreme and outrageous so as to permit recovery, but, where reasonable people may differ, the jury determines whether the conduct was extreme and outrageous enough to result in liability.").

For these reasons, this Court should affirm the district court's "extreme" and "outrageous" conduct finding and resulting dismissal.

**B.** **Ms. Hale did not plausibly plead "severe or extreme emotional distress" or that it was attributable to Mr. Sherman's alleged words.**

This Court could also affirm on an alternative ground that Ms. Hale did not plausibly plead facts demonstrating she suffered emotional distress of the kind required by this claim, or that her alleged distress was attributable to Mr. Sherman's alleged words. *See Wright v. Riveland*, 219 F.3d 905, 912 (9th Cir. 2000) ("If support exists in the record, the dismissal may be affirmed on any proper ground, even if the district court did not reach the issue or relied on alternative grounds.").

First, Ms. Hale did not plausibly plead facts demonstrating she suffered "severe or extreme emotional distress" of the kind recognized by law. Emotional distress "must be so severe and of such intensity that no reasonable person could be expected to endure it." *Alam*, 819 F. Supp. at 911 (citing *Nelson v. City of Las Vegas,* 99 Nev. 548, 665 P.2d 1141, 1145 (1983)). Likewise, "the less extreme the

17

outrage the more appropriate it is to require evidence of physical injury or illness from the emotional distress." *Id.* Courts may review this question as a matter of law. *See id.* (citing Restatement (Second) of Torts § 46 cmts. h and j (Am. Law. Inst. 1965)).

Ms. Hale did not allege facts plausibly demonstrating she suffered "severe or extreme" emotional distress. Rather, she pleaded "crying attacks, embarrassment, feeling violated, having nightmares about the incident, being unable to sleep, indignity, humiliation, nervousness, tension, anxiety, [and] recurring nightmares and depression[.]" ER-14 ¶ 67. These are the types of "injuries" that the Nevada Supreme Court and various judges in the District of Nevada applying Nevada law have held do not qualify as "serious emotional distress."

For example, in *Chowdhry v. NLVH, Inc.*, the Nevada Supreme Court held that insomnia and general physical or emotional discomfort do not suffice. 109 Nev. 478, 482 (1993). In *Alam v. Reno Hilton Corp.*, the court held that feelings of inferiority, headaches, irritability, and weight loss do not qualify. 819 F. Supp. 905, 911 (D. Nev. 1993). In *Goodwin v. Executive Trustee Services*, the court found that sleeplessness and headaches were insufficient because such ailments are not the type of distress that is so severe that "no reasonable person could be expected to endure it." 680 F. Supp. 2d 1244, 1256 (D. Nev. 2010) (quoting *Alam*, 819 F. Supp. at 911). In *Hirata v. Southern Nevada Health District*, the court

18

dismissed an intentional infliction of emotional distress claim where the alleged "serious emotional distress" was limited to "great humiliation, severe and extreme emotional distress, pain and suffering[.]" 2014 U.S. Dist. LEXIS 136166, *13 (D. Nev. Sept. 26, 2014).  As a final example, the *Lopez* court alternatively noted the plaintiff's emotional distress allegations of fear, shortness of breath, chest pains, and diarrhea were not sufficiently severe because "[g]eneral physical or emotional discomfort is insufficient to demonstrate severe emotional distress." 2009 U.S. Dist. LEXIS 47520, *15-16 (citing *Alam*, 819 F. Supp. at 911).

Ms. Hale simply did not – and could not have – plead the requisite "severe" ailments caused by alleged fleeting verbal conduct.[9]  Her failure and inability to do so provides an alternative basis to affirm the district court's decision.

## III. THIS COURT SHOULD DISREGARD APPELLANT'S MOTION TO AMEND ARGUMENT.

Ms. Hale next faults the district court for not granting her leave to amend. *E.g.*, Opening Br., 12.  But she did not file a motion to amend in the district court and, even if she had, her request would have been futile.

### A. *Ms. Hale Did Not File a Motion for Leave to Amend*

Ms. Hale did not file a motion for leave to amend her complaint with the district court, nor did she comply with the Local Rules governing requests to file

ACTIVE 688951711v1

an amended pleading. LR 15-1(a) ("Unless the court orders otherwise, the moving party must attach the proposed amended pleading to a motion seeking leave of the court to file an amended pleading."). Instead, she simply referenced the prospect of it in her opposition to Mr. Sherman's motion to dismiss. But her failure to comply with the Local Rule results in denial of a request for leave to amend which, again, Ms. Hale did not actually file in the first place. *See, e.g.*, *McGee v. CitiMortgage*, 2014 U.S. Dist. LEXIS 127401, *13-14, 2014 WL 4541030 (D. Nev. Sept. 11, 2014) (denying request to amend contained in opposition to motion to dismiss as noncompliant with local rules). Mr. Sherman even addressed this point in his reply brief in support of his motion to dismiss, SER-RS-84 at 11:20-28, and Ms. Hale still made no follow up request to the district court for leave to amend in compliance with the Local Rules (or otherwise).

Equally important, Ms. Hale failed to exercise her ability to amend as a matter of right. The Federal Rules of Civil Procedure allow a party to amend its pleading once as a matter of course within 21 days after service of a motion to dismiss. Fed. R. Civ. P. 15(a)(1)(B). Hale had the right to amend her complaint without obtaining leave, but she failed to do so, instead choosing to stand on her

---

[9]Once again, Ms. Hale incorrectly urges this Court to rely on evidence outside the pleadings. Opening Br. at 23; *see Farr*, 990 F.2d at 454 ("[E]vidence outside the pleadings . . . cannot normally be considered in deciding a 12(b)(6) motion.").

complaint and oppose the motion. She cannot now claim prejudice from her own tactical decision.

Regardless, Ms. Hale did not place a compliant request to amend before the district court and therefore her present request is not properly before this Court. *Robert P. Mosier, Grp. Inc. v. Stonefield Josephson, Inc.*, 815 F.3d 1161, 1172 (9th Cir. 2016) ("Normally, we do not consider on appeal issues not properly raised before the district court."). Indeed, Ms. Hale includes no evidence of that in the record. *See generally* ER; *In re O'Brien*, 312 F.3d 1135, 1137 (9th Cir. 2002) ("[T]he failure to present a sufficient record can itself serve as a basis for summary affirmance."). Either way, Appellant does not appropriately argue or develop this point. *Badgley v. United States*, 957 F.3d 969, 979 (9th Cir. 2020) ("Arguments made in passing and not supported by citations to the record or to case authority are generally deemed waived.").

### B.   *Amendment Would Have Been Futile*

Even if she had submitted a proper request for leave to amend it would have been futile, *Foman v. Davis,* 371 U.S. 178, 182 (1962) (holding that leave to amend need not be granted when futile), providing another alternative ground for affirmance of the district court's Order.

Ms. Hale was deposed prior to the district court's dismissal of Mr. Sherman and she testified to a watered-down version of the events set forth in her

21

complaint. SER-RS-45-61 at 208:24-241:12 (testifying as to the first alleged incident on January 9 or 10, 2018); SER-RS-61-67 at 241:13-247:11 (testifying as to the second alleged incident on February 6, 2018).

With respect to the alleged January 2018 interaction, Ms. Hale testified that:

- She came off break and went to oversee a craps table that Mr. Sherman was already playing at. SER-RS-46 at 209:5-23;
- The casino supervisor was supervising the game, among other individuals. SER-RS-47 at 210:8-21;
- There was no issue when she arrived. SER-RS-48-49 at 211:18-212:1;
- Mr. Sherman lost his roll (i.e., he "crapped out") at which point he re-bet and handed money to two individuals he was with. SER-RS-50 at 215:15-25;
- Ms. Hale asked the casino supervisor if he was going to allow Mr. Sherman to bet over the table max, which apparently the Cosmopolitan had been allowing for two hours. SER-RS-51 at 216:1-12; 221:20-222:8);
- Ms. Hale stopped Mr. Sherman from betting over the table max. SER-RS-54 at 227:2-14;
- Mr. Sherman responded by saying, "I'll show you what the table max is," put more money on the table, told Ms. Hale not to tell him what to do, SER-RS-56-57 at 232:23-233:1, used the F-word, and said words to the effect of "You know, I'll call the president tomorrow. You know, you don't tell me what to do or what I can do because, you know, I've lost a lot of money here. You don't know who I am[,]" or similar. SER-RS-57-58 at 233:24-234:12.

Ms. Hale confirmed that Mr. Sherman said nothing further on that date, SER-RS-59 at 236:2-10, apart from telling her to "get someone over there that could handle the job if [Ms. Hale] couldn't handle it." SER-RS-59 at 236:13-16; *see also* SER-RS-60 at 237:9:14 ("Q. So the only thing he actually said, the words that came out of his mouth that you are now suing him for is 'F—k you, mother

f—r. I'll have your job.' Anything else? A. Right. The intentional emotional in my opinion harassment and what he caused me from it.").

As to the alleged February 2018 interaction, Ms. Hale testified to a <u>far</u> tamer version of events than those she alleged in her complaint. In particular, she testified that:

- Mr. Sherman was playing at a table other than the one she was at, SER-RS-61-66 at 241:25-246:1;
- Mr. Sherman asked her, "Tonya, why do you have something against me? What have I done to you? . . . Tonya don't like me[,]" and similar innocuous remarks, SER-RS-62-63 at 242:23-243:2;
- Ms. Hale ignored him, SER-RS-64 at 244:1-6;
- It lasted for three or four minutes, SER-RS-64 at 244:14-17;
- Later, Mr. Sherman walked over to a table Ms. Hale was overseeing, SER-RS-64 at 244:20, to give someone money and then walked away, SER-RS-66 at 246:13-17; and
- Mr. Sherman left without further incident, SER-RS-67 at 247:3-11.

Ms. Hale further confirmed that Mr. Sherman did not make any reference to her race or gender. SER-RS-59-60 at 236:11-237:5. Ms. Hale confirmed that Mr. Sherman did not say anything to her of a sexual nature. SER-RS-60 at 237:6-8.

Accordingly, Ms. Hale's nebulous request to amend, in which she did not even articulate to the district court what amendment(s) she would seek to make, would not have saved her claim against Mr. Sherman. She simply testified to a <u>less</u> extreme version of the events than the one set forth in her complaint. Thus, the Court can affirm the district court's dismissal on the alternative ground that amendment would have been futile for one or all of these reasons. *See Thinket Ink*

23

*Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004) ("Here, based upon a thorough review of the record, it is clear that granting leave to amend would have been futile. The fact that the district court did not so state specifically is not a basis to reverse the district court.") (*citing Lockman Found. v. Evangelical All. Mission*, 930 F.2d 764, 772 (9th Cir. 1991) ("[The] district court may decline to grant such leave . . . where there is any apparent or declared reason for doing so, including . . . the futility of the amendment.")).

## CONCLUSION

This Court should affirm the district court. Ms. Hale did not plausibly plead a claim for intentional infliction of emotional distress against Mr. Sherman. Nor did she comply with the requirements of seeking leave to amend. Finally, even if she had done so, her proposed amendment(s) – whatever they would be – would have necessarily required her to assert more extreme and outrageous facts, which she would have been unable to do by her own admission.

Dated July 20, 2023

Respectfully submitted,

GREENBERG TRAURIG, LLP

By: /s/ *Jason Hicks*
*Attorneys for Defendant – Appellee Richard Sherman*

24

## <u>STATEMENT OF RELATED CASES</u>

Mr. Sherman is unaware of any related cases pending before this Court.

Dated July 20, 2023

Respectfully submitted,
GREENBERG TRAURIG, LLP

By: <u>/s/ *Jason Hicks*</u>
*Attorneys for Defendant – Appellee*
*Richard Sherman*

25

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**  No. 22-16274

I am the attorney or self-represented party.

**This brief contains** 5,823 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.

☐ a party or parties are filing a single brief in response to multiple briefs.

☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated [         ].

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Jason Hicks   **Date** 7/20/23

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**                                                                 *Rev. 12/01/22*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
## Form 15. Certificate of Service for Electronic Filing

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)** | No. 22-16274

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☒ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are NOT Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)*:

RICHARD SHERMAN'S ANSWERING BRIEF; and
RICHARD SHERMAN'S SUPPLEMENTAL EXCERPTS OF RECORD
VOLUME 1 OF 1

**Signature** | *s/ Jason Hicks* | **Date** | 07/20/23

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 15** | *Rev. 12/01/2018*