IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

Docket No. 22-16274

---

TONYA HALE

Plaintiff - Appellant

vs.

NV PROPERTY 1, LLC, DBA The Cosmopolitan of Las Vegas, a Nevada Limited Liability Company; THE COSMOPOLITAN OF LAS VEGAS; RICHARD SHERMAN, an individual

Defendants – Appellees

---

On Appeal From an Order of the

United States District Court

for the District of Nevada

---

REPLY OF APPELLANT

---

Michael P. Balaban
LAW OFFICES OF MICHAEL P. BALABAN
10726 Del Rudini Street
Las Vegas, Nevada  89141

Attorney for Appellant

# TABLE OF CONTENTS

Page

I.   INTRODUCTION                                                    1

II.  ARGUMENT                                                        3

    A.   Sherman Predictably Argues in his Response that his
        Conduct was not Extreme and Outrageous Under
        Existing Case Law or that Hale Suffered Severe or
        Extreme Emotion Distress and Cosmopolitan Argues
        that it Can't be Found Liable Under a Negligence Theory,
        while both Parties Argue that Leave to Amend was not
        Properly Requested by Hale                                   3

    B.   In their Response Cosmopolitan Fails to Understand
        like the District Court Failed to Understand that the
        Adequacy of an Employer's Response can Create a
        Hostile Work Environment by Itself and here at a
        Minimum there is an Issue of Material as to Whether
        Cosmopolitan Response was Adequate given that they
        Did no Investigation into Hale's Claims and Arguably
        did not take Reasonable Steps to Prevent Further
        Harassment by Allowing Sherman Back on the
        Property so he Could Harass Hale Again                       8

    C.   In Addition Cosmopolitan is Wrong that Sherman's
        Outbursts were not Based on Sex, were not Severe
        and Pervasive Under the Circumstances and Finally
        that Hale's Affidavit Contradicted her Deposition
        Testimony                                                   12

    D.   Although Cosmopolitan Claims that Hale's Action
        for Retaliation must Fail as a Matter of Law because
        she did not Experience an Adverse Employment Action
        and Cannot Show Causal Connection with Respect to
        the Request to Recertify her FMLA, Hale has Met her
        Burden at the Summary Judgment Stage as Set Forth

in her Opening Brief and Below ................................ 15

III.   CONCLUSION ................................ 19

# TABLES OF AUTHORITIES
## FEDERAL CASES

Page

*Andrews v. City of Philadelphia*, 895 F.2d 1469, 1485 (3d Cir.1990)  13

*Boumehdi v. Plastag Holdings*, LLC, 489 F3d 781, 788 (7th Cir. 2007)  13-14

*Branda v. Sanford*, 637 P.2d 1223, 1224, 1227 (1981)  4-5

*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)  17

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)  15-16

*Burns v. McGregor Elec. Indus.*, 989 F.2d 959, 964–65 (8th Cir.1993)  13

*Crist v. Focus Homes, Inc.*, 122 F.3d 1107, 1111–12 (8th Cir. 1997)  10

*Demetrius Williams v. Denis R. McDonough*, No.
2:20-cv-10074, 2022 WL 18214015, at *17 (C.D. Cal. Nov. 7, 2022)  15

*DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992)  4

*Dias v. Sky Chefs, Inc.*, 919 F.2d 1370, 1375-76 (9th Cir. 1990)  8

*Folkerson v. Circus Circus Enters., Inc.*, 107 F.3d 754, 756 (9th Cir. 1997)  10

*Forrest v. Brinker Int'l Payroll Co.*, 511 F.3d 225, 229–30 (1st Cir.2007)  13

*Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643, 646, 652 (9th Cir. 2021)  9-10

*Giovanetti v. Trustees of California State University
(Humboldt State University)*, No. 04-cv-5514, 2007
WL 9735004, at *2 (N.D. Cal. Sept. 5, 2007)  15-16

*Kraja v. Bellagio, LLC,* No. 17-16105 (9th Cir. 2018)  8

*Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 967 (9th Cir. 2002)  9

*Lockard v. Pizza Hut, Inc.*, 162 F3d 1062, 1073 (10th Cir. 1998)  7, 9

*MGM Grand Hotel-Reno, Inc. v. Insley*                                                   7

*Ray v. Henderson*, 217 F.3d 1234, 1242-43 (9th Cir. 2000)                    15-16

*Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d
                        798, 810 (11th Cir.2010)                                         12

*Rodriguez-Hernandez v. Miranda-Velez*, 132 F.3d 848,
        854–55 (1st Cir. 1998)                                                          10

*Russo v. Shac, LLC*, 498 P.3d 1289 (Nev.App. 2021)                             7-8

*Steiner v. Showboat Operating Co.*, 25 F.3d 1459 (9th Cir. 1994)               8

*Xing Xing Lin v. Potter*, No. C 10- 03757 LB, 2011
WL 233053, at *11 (N.D. Cal. Jan. 22, 2011)                                     15

*Winsor v. Hinckley Dodge, Inc.*, 79 F.3d 996, 1000–01 (10th Cir.1996)         13

## FEDERAL STATUTES

C.F.R. §825.305(a)                                                             18

## STATE STATUTES

N.R.S. §613.330, et seq.                                                        7

## MISCELLANEOUS

*Webster's Third New International Dictionary* (2002)                         12-13

Restatement (Second) of Agency § 219(2)(b)                                      7

# I.

# INTRODUCTION

Although the attorneys' for Defendants and Appellees NV Property 1, LLC dba The Cosmopolitan of Las Vegas, a Nevada Limited Liability Company ("Cosmopolitan's") and Richard Sherman, an individual ("Sherman) classify Sherman's extreme and outrageous conduct as nothing more than two brief, isolated interactions in which he used rude language and innocuous behavior that Plaintiff and Appellant Tonya Hale ("Hale") found annoying as set forth below and in Hale's opening brief nothing could be further from the truth.

In fact on two occasions Sherman came into the Cosmopolitan to play Craps and aggressively taunted and harassed Hale by continuing to yell her name, using profanity including saying "F*** you, you mother f***er. I'll have your f***ing job and called her a "fat bitch" and told her to "do your job bitch", questioned her authority manager arguably because she was a women and threatened her job and even did some push up in the middle of the floor to draw attention to himself.

It was so bad that a couple of customers and fellow employees came up to her and commented how sorry they were that she had to endure Sherman's verbally assaulting her and berating her and it led to Sherman being kicked out/trespassed from the casino after the first incident.

Casino guests, especially casino guests who gamble a lot of money are not kicked out of casinos for minor isolated interactions of innocuous behavior.

In fact a casino guest getting kick out of a casino for any kind of behavior is very rare. So both Cosmopolitan's and Sherman's attorneys attempt to downplay Sherman's conduct as a minor annoyances which were unpleasant but were no big deal is laughable.

Further Cosmopolitan's assertion that Hale's hostile environment claim is subject to dismissal because the actions about which her complains were not severe

or pervasive is equally laughable.

But what really "takes the cake" is Cosmopolitan's claim that they took appropriate corrective actions to deal with Sherman's behavior.

In fact after Sherman was trespassed from the casino after the first incident which occurred January 10, 2018, the trespass only lasted one day before the Vice President of Security and Surveillance lifted the trespass thus allowing Sherman to frequent the hotel and casino once again.

At no time did anyone from the Cosmopolitan ask Hale or anyone else from the gaming area where the incident occurred, for statement, or otherwise investigate what happened with anyone but Casino Shift Manager Bentley.

If it was not for this case, there would still be *no* investigation of the facts of this case with respect to Hale and harassment she faced.

This is despite the fact that Hale emailed the Director of Table Games about what had occurred on both incidents, after the second incident on February 6, 2018, and neither she nor anyone from the Cosmopolitan got back to Hale to get a statement or to do any type of investigation as to the alleged harassment.

Further this was in direct contravention of Cosmopolitan's policy to investigate any claim of discrimination and/or harassment even if the CoStar (ie. employee) doesn't want them to.

As an employee Hale should not be harassed and disrespected like she was as a condition of employment. That is why we have laws to protect employees against harassment in the workplace including harassment by patrons or customers.

This being the case, Hale respectfully requests that the Court of Appeals overturn the district court's dismissal of her intentional infliction of emotional distress and its grant of summary judgment on Hale's hostile environment sexual harassment and retaliation claims, and allow the matter to proceed to a jury trial on its merits.

## II.

## ARGUMENT

**A.  Sherman Predictably Argues in his Response that his Conduct was not Extreme and Outrageous Under Existing Case Law or that Hale Suffered Severe or Extreme Emotion Distress and Cosmopolitan Argues that it Can't be Found Liable Under a Negligence Theory, while both Parties Argue that Leave to Amend was not Properly Requested by Hale.**

Sherman argues that "Ms. Hale did not plead 'utterly intolerable' and uncivilized behavior that is "outside all possible bounds of decency" and which no reasonable person could be expected to endure" and instead claims that Sherman allegedly directed profanity and mild insults at Hale concerning her job performance on two brief, isolated occasions.[1]

While that might be Sherman's version of what was plead and/or what has been presented in the case, when looking at what was plead and/or presented in the case in the light most favorable to Hale and making all reasonable inferences for Hale as is supposed to be done in deciding a motion to dismiss or motion for summary judgment, it is plausible or reasonable to come to the opposite conclusion.[2]

_____

[1] Sherman's Answering Brief at pg. 9.

[2] Hale believes that this court should address Sherman's case on the pleadings, the discovery in the case and the affidavits presented by the different parties. What Sherman and his attorneys are attempting to do it take advantage of the motion to dismiss process. It is not uncommon for attorneys nowadays to file a motion to dismiss in every case no matter what is plead for strategic reasons. If the motion is denied they haven't loss anything but if the motion is granted like here they claim that the appeal should only be based on the pleading. If the court only assesses the pleading and the decision to dismiss is reversed with respect to both Sherman and Cosmopolitan, and the case only goes to trial against Cosmopolitan, Sherman has received an unfair advantage by filing a motion to dismiss "right out of the gate". This conclusion is bolstered by the fact that Sherman and his attorneys concede

Sherman contends in his answering brief that this case is more like the cases he cites that found that the conduct wasn't sufficient to find intentional infliction of emotion distress because it wasn't extreme and outrageous enough or it amounted to mere insults, indignities, threats, annoyances, etc. while Hale claims her case is more like the cases she cites which found intentional infliction of emotion distress.

Sherman claims the facts in *Branda v. Sanford*, 637 P.2d 1223 (1981) "were objectively far more severe and outrageous" than here while Hale claims just the opposite.

As set forth in Hale's opening brief, while Foxx might have used some sexual innuendoes that clearly weren't present in the language uttered Sherman, Sherman was arguably more verbally abusive in his utterances statement to Hale.

Both individuals used profanity and offensive terms toward women, Foxx allegedly calling Branda a "f--k--g bitch," and "f--k--g c—t" while Sherman allegedly told Hale a "do your job bitch" and also called Hale a "fat bitch".

However in this case Sherman also taunted Hale allegedly because she was a women by saying "F*** you, you mother f***er. I'll have your f***ing job…I'll

---

that amending the complaint would be futile, thus they are conceding that even looking at what was plead, discovery in the case and the affidavits presented by the different parties, that in their opinion Hale still can't recovery on her claim of intentional infliction of emotional distress. Further when assessing leave to amend if a motion to dismiss is granted, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.,* 957 F.2d 655, 658 (9th Cir. 1992). Thus by assessing basically everything that has been presented in the case, the court can assess whether leave to amend was wrongly denied. Finally although Sherman and Cosmopolitan question whether leave to amend is properly before this court, Hale asked for leave to amend in her oppositions to both Sherman's and Cosmopolitan's motions to dismiss and its order granting their motions to dismiss, the district court said nothing about leave to amend so it's safe to assume that it was not allowing leave to amend.

call the president tomorrow" and "Tonya, why do you have something against me? What have I done to you?" and kept taunting and berating her by yelling, "Tonya, you know, I don't understand. What have I done to you? Tonya don't like me." Sherman also did some pushups in the middle of the floor to draw attention to himself as a way to taunt her. [ER-38, Hale Aff. ¶15.]

Finally both case arguably involved harassment based on sex/gender and in both cased the plaintiff was arguably subject to public humiliation. In *Branda* a "number of hotel patrons and employees [watched] and listen[ed] to the altercation" and in this case both casino patrons and fellow casino employees watched and listened.

Further Casino Shift Manager Bentley felt that Sherman directing obscenities and whatnot to employees was outrageous conduct [ER-76, Bentley 87:1-10] and Hale had a couple of customers and fellow employees come up to her and comment that they were sorry she had to go through what she did and how improper Sherman's conduct was towards her. [ER-37, Hale Aff. ¶10.]

Interacting with a rude and aggressive casino guest is not something a casino employee should be expected and required to do, especially to the extent of the conduct experienced from Sherman.

While unfortunately casino guests get out of hand occasionally, this is not something that a casino employee should have to put up with as a condition of employment, especially when the conduct of the casino guest was "over the top" like Sherman's was.

Further while Sherman did *not* make sexual advances towards Hale, he did make sexual comments to her by allegedly telling her to "do your job bitch" and

also called Hale a "fat bitch", both of which could be considered extreme and outrageous.

Finally it *was* arguably extreme and outrageous conduct by Sherman when he made threats to have Hale fired and insinuated that Hale could handle *not* handle Sherman arguably because of her gender and they needed to hire someone who could.

Thus whether Sherman's conduct was extreme and outrageous is better left to a community standard, decided by a jury of Hale's peers from the community instead of a judge who doesn't represent what the community standard is.

Further Sherman claims that Hale did not sufficient plead the requirement of suffering "severe or extreme emotional distress".

This is simply not the case. Hale alleges at paragraph 67 of her complaint that, "Sherman's and Cosmopolitan's actions did in fact cause severe emotional distress to Plaintiff, including but not limited to, crying attacks, embarrassment, feeling violated, having nightmares about the incident, being unable to sleep, indignity, humiliation, nervousness, tension, anxiety, recurring nightmares and depression, the extent of which is not fully known at this time."

Further Hale's affidavit shows that on February 19, 2018 Plaintiff went to ABC Therapy clinic for the emotional distress she was suffering from the encounters with Sherman including nightmares about Sherman accosting her and that he might be back in the future. [ER-38, 49-50, Hale Aff. ¶17, Ex. 4.]

Finally Hale also confided in Acker [about] the anxiety and panic attacks she suffered because of the incident. [ER-64, Acker Depo. 52:11-21.] Hale also told Acker that she was going to seek treatment for the anxiety she was experiencing. [ER-67, Acker Depo. 56:11-20.]

Thus considering the somewhat nebulous requirements of the this element to begin with and the fact that Hale has allegedly suffered emotional distress in the

form of anxiety, panic attacks, recurring nightmares, etc. and went for treatment and confided to others about the same, makes dismissal as a matter of law for this reason untenable.

As to Cosmopolitan, they claim that they can't be held liable for intentional infliction of emotional distress for their failure to exercise of reasonable care to prevent the conduct or continuing conduct or a customer like Sherman which is just not the case.

As the court explained in *Lockard v. Pizza Hut, Inc.*, 162 F3d 1062, 1073 (10th Cir. 1998), also cited *infra* with regards to Cosmopolitan's liability for hostile work environment sexual harassment, "[i]n cases involving harassment by co-workers, as opposed to harassment perpetrated by supervisory employees, the only basis for employer liability available is a negligence theory under Restatement (Second) of Agency § 219(2)(b)." (citations omitted.) "Because harassment by customers is more analogous to harassment by co-workers than by supervisors, we hold the same standard of liability applies to both co-worker and customer harassment." *Id.* "Thus, employers may be held liable in these circumstances if they "fail to remedy or prevent a hostile or offensive work environment of which management-level employees knew, or in the exercise of reasonable care should have known." (citation quotation omitted). *Id.*

Thus here Cosmopolitan should be held liable for Sherman's conduct for their failure to exercise of reasonable care to prevent his conduct or continuing conduct that resulting in intentional infliction of emotional distress to Hale.

Finally Hale's intentional infliction of emotional distress is not preempted by N.R.S. §613.330, et seq. Nevada recognizes IIED in the employment context. S*ee MGM Grand Hotel-Reno, Inc. v. Insley* , 102 Nev. 513, 520 (1986)(holding that a terminated employee's IIED claim could proceed independent of any claims arising under a bargaining agreement). *Also see Russo v. Shac*, LLC, 498 P.3d

1289 (Nev. App. 2021), where the Nevada Court of Appeals refused to dismiss *Russo's* IIED claim and said nothing about it being preempted even though it was based on the same facts as her tortious constructive discharge claim. *Also see* Ninth Circuit cases applying Nevada law; *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1466 (9th Cir. 1994), the court allowed hostile environment sexual harassment employment claim to proceed to trial against the employer along with an IIED claim under the principles of respondeat superior; *Dias v. Sky Chefs, Inc.*, 919 F.2d 1370, 1375-76 (9th Cir. 1990), in which Ninth Circuit Court of Appeal affirmed a jury verdict against employer *Sky Chefs, Inc.* for hostile environment sexual harassment and IIED also under the principles of respondeat superior; *Kraja v. Bellagio, LLC,* No. 17-16105 (9th Cir. 2018), in which Kraja filed a race discrimination, retaliation and hostile environment claim along with his IIED claim and the court of appeals allowed the IIED claim to go to trial which resulted in a $500,000 jury award.

**B.    In their Response Cosmopolitan Fails to Understand like the District Court Failed to Understand that the Adequacy of an Employer's Response can Create a Hostile Work Environment by Itself and here at a Minimum there is an Issue of Material as to Whether Cosmopolitan Response was Adequate given that they Did no Investigation into Hale's Claims and Arguably did not take Reasonable Steps to Prevent Further Harassment by Allowing Sherman Back on the Property so he Could Harass Hale Again.**

In their response to Hale's opening brief Cosmopolitan talks about being "held liable for Sherman's two brief, isolated, and sporadic verbal interactions with Hale."[3]

Hale is not claiming that Cosmopolitan should be held directly or vicariously liable for Sherman's conduct but rather it should be held liable for failure to

---

[3] Cosmopolitan's Answering Brief at pg. 38.

respond adequately to Sherman's conduct by allowing him back on the property and not investigating Hale's claims of harassment and taking reasonable steps to prevent further harassment.

In *Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643 (9th Cir. 2021), cited in Hale's opening brief, the court said that "[S]everal circuit courts, including our own, have recognized that an employer's response to a third party's unwelcome sexual advances toward an employee can independently create a hostile work environment." "Thus, the district court erred when it focused on the customer's conduct; Fried's claim is premised on Wynn's response to the customer's harassment" *Id.* at 650.

This included *Little v. Windermere Relocation, Inc.*, 301 F.3d 958 (9th Cir. 2002) where the court held "that a reasonable jury could agree with Little because Windermere failed to take immediate and effective remedial action, because Little was not relieved of responsibility for the Starbucks account, and because Little was warned she might suffer an adverse employment action if she reported the abuse. *Id.* at 967. "We concluded that Windermere's 'actions reinforced rather than remediated' the sexual assault and allowed the sexual assault's effects to permeate Little's work environment and alter it irrevocably." *Id.*

The Tenth Circuit has recognized that an employer's response to a customer's offensive conduct can create a hostile work environment where the response subjects an employee to further abuse. *In Lockard v. Pizza Hut, Inc.*, *supra*. The Tenth Circuit reasoned that the employer was liable for creating a hostile work environment because the restaurant had notice of the customers' harassing conduct, yet ordered Lockard to continue waiting on them. *See id.* at 1075 (emphasizing that the manager "placed Ms. Lockard in an abusive and potentially dangerous situation, although he clearly had both the means and the authority to avoid doing so"). Lockard's manager clearly conveyed that Lockard was expected to tolerate the customers' abuse. *See id.*

Other circuits have held employers liable on hostile work environment claims, or have denied summary judgment to employers on such claims, where the employer's response to known harassment has subjected the employee to further harassment. *See, e.g., Rodriguez-Hernandez v. Miranda-Velez*, 132 F.3d 848, 854–55 (1st Cir. 1998) (holding a reasonable jury could find a hostile work environment was created when a supervisor refused to intervene after a firm client made sexual advances toward an employee, and instead "conditioned her future with the company on her responding to the unwanted sexual demands of a customer"); *Crist v. Focus Homes, Inc.*, 122 F.3d 1107, 1111–12 (8th Cir. 1997)(finding dispute of fact as to a hostile work environment premised on sexual harassment where a care facility asked a care provider, who had reported being sexually assaulted by a resident, to subject herself to additional offensive touching so management could observe the conduct); *cf. Folkerson v. Circus Circus Enters., Inc.*, 107 F.3d 754, 756 (9th Cir. 1997)(explaining that "an employer may be held liable for sexual harassment on the part of a private individual ... where the employer either ratifies or acquiesces in the harassment by not taking immediate and/or corrective action when it knew or should have known of the conduct").

Thus the court in *Fried* held that "(U)nder our precedent, the district court erred by ruling on summary judgment that Barajas's response to Fried's report of the customer's harassment was insufficient as a matter of law to create a hostile work environment." *Fried,* 18 F.4th at 652.

So while Cosmopolitan did briefly trespass Sherman from the property, the let him back on the property the next day and had this not been done he would *not* have been on the property on February 6th to again harass Hale.

Further the decision to lift the trespass from Sherman without talking to Hale about the interaction she had with Sherman or otherwise investigating any harassment she claimed. [ER-99, Logue Depo. 18:8-11.]

In fact Hale's claims of harassment were *never* investigated despite the fact

that Bentley viewed the harassment, her attorney wrote a letter to Cosmopolitan making them aware of the first incident of harassment [ER-38, Hale Aff. ¶12; ER 58, 120-124, Balaban Aff. ¶¶10, 11, Exs. 8, 9], Hale filed a complaint with the NERC regarding the first incident [ER-38, 41-42, Hale Aff. ¶13, Ex. 1] and Hale emailed Gorman after the second incident outlining what happened in both incidents. [ER-86-89, Gorman Depo. 20:23-21:9, 29:13-24, 35:9-16].

And this was despite the fact that this was in direct contravention of Cosmopolitan's policy to investigate any claim of discrimination and/or harassment even if the employee doesn't want them to. [ER-90-91, Gorman Depo. 38:19-39:10.]

Thus if Cosmopolitan had done a proper investigation and taken voluntary statements from Hale and the other individuals who were deposed by Hale's attorney, they should have trespassed Sherman from the property permanently and the Hale would *not* have been subjected to harassment the second time because Sherman would have not had access to the property and had the opportunity to again confront Hale and subject her to harassment.

This is not much different than the cases cited above where the employer's response to known harassment was to subject the employee to further harassment.

Cosmopolitan chose to take the wealth and celebrity that Sherman would bring to their business over their obligation to provide a safe environment free of sexual abuse to their employee Hale.

Hale is not asking this Court rule that Cosmopolitan's response to Sherman's harassment was adequate, just that there is a question of material fact for the jury whether it was adequate and *not* that it was adequate as a matter of law.

Thus when looking at the facts in a light most favorable to Hale and making all reasonable inferences for Hale, a reasonable jury could and probably would find the inadequacy of Cosmopolitan's investigation created a hostile work

environment for Hale.

**C.   In Addition Cosmopolitan is Wrong that Sherman's Outbursts were not Based on Sex, were not Severe and Pervasive Under the Circumstances and Finally that Hale's Affidavit Contradicted her Deposition Testimony.**

In its answering brief Cosmopolitan also questions whether Sherman's Outbursts were based on sex, were severe and pervasive under the circumstances and finally that Hale's affidavit contradicts her deposition testimony.

First Sherman's outbursts were based on sex as dealer Maria Torres heard Sherman say to Hale "do your job bitch" and also called Hale a "fat bitch". [ER-108-110, Torres Depo. 12:19-13:1, 21:4-13.]

Floor supervisor Xiao Deux also remembers Sherman calling Hale fat [ER-82, Deux Depo. 65:10-12] and dealer Mirko Zhel Yazkov might have heard Sherman call Hale a bitch. [ER-116, Yazkov Depo. 41:1-11.]

Further Sherman told Hale if "she couldn't handle this then they should get someone who could" which Hale inferred that Sherman was saying if she couldn't handle the situation because she was a woman that they should get a man to handle the situation [ER-37, Hale Aff. ¶8] and Torres thought Sherman was questioning Hale's authority as a woman by calling her a "nobody." [ER-109, Torres Depo. 13:3-6.]

First as to Sherman allegedly referring to Hale as a "bitch" or "fat bitch" most of the time that word has a derogatory sexual connotation towards women.

The Eleventh Circuit sitting en banc issued a stern opinion on this issue, holding unequivocally that, "when a co-worker calls a female employee a 'bitch,' the word is gender-derogatory." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 810 (11th Cir.2010) (en banc) (noting that both the original definition of the term—"the female of the dog"—and its secondary meanings—"a lewd or immoral woman" or a "malicious, spiteful, and domineering woman"—are gender-specific), citing *Webster's Third New International Dictionary* (2002). Additional

evidence that "bitch" is "sex based" for purposes of establishing gender-based harassment is not necessary.

*Reeves* is consistent with decisions in several other circuits. "A raft of case law ... establishes that the use of sexually degrading, gender-specific epithets, such as 'slut,' 'cunt,' 'whore,' and 'bitch' ... has been consistently held to constitute harassment based upon sex." *Forrest v. Brinker Int'l Payroll Co.*, 511 F.3d 225, 229–30 (1st Cir.2007), citing *Winsor v. Hinckley Dodge, Inc.*, 79 F.3d 996, 1000–01 (10th Cir.1996) (finding it "beyond dispute" that plaintiff subjected to "vulgar and offensive epithets" such as "whore," "bitch" and "curb side cunt" could establish Title VII sexual harassment claim even though abuse may have been motivated by gender-neutral reasons)(internal citations omitted); *Burns v. McGregor Elec. Indus.*, 989 F.2d 959, 964–65 (8th Cir.1993) (reversing summary judgment and noting that "a female worker need not be propositioned, touched offensively, or harassed by sexual innuendo" to establish sexual harassment claim, and holding that terms such as "bitch," "slut," and "cunt" directed to female employee amounted to harassment based on her sex); *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1485 (3d Cir.1990)("[T]he pervasive use of derogatory and insulting terms relating to women generally and addressed to female employees personally may serve as evidence of a hostile environment.").

Thus it is reasonable on summary judgment when all reasonable inferences was supposed to be made the non-moving party to infer that Sherman's alleged use of the word "bitch" when referring to Hale, was based on sex. [4]

Second Hale inferring that Sherman meant that she couldn't handle the job because she was a women when he said if "she couldn't handle this then they

---

[4] As set forth in Hale' opening brief, Offensive conduct need not be sexual in nature to create a hostile environment in the workplace. A pervasive pattern of abuse directed at women violates Title VII even if not motivated by sexual

should get someone who could" arguably can be interpreted as discrimination on the basis or gender/sex.

While Cosmopolitan might disagree with this interpretation because Sherman did not actually say that she could not handle the job because she was a women, as just said on summary judgment all reasonable inferences are supposed to be made for the non-moving

Further alleged sexual harassment was severe and pervasive under the circumstances because Sherman as a non-resident of Las Vegas only visited the city 3 or 4 times a year so by its very nature any harassment by Sherman was going to be sporadic and infrequent unlike someone who lives in Las Vegas who might frequent a casino every day but as set forth above the relevant inquiry when we are dealing with a casino patron like here, is the adequacy of Cosmopolitan's response to Sherman's harassment.

Finally there is *no* merit to Cosmopolitan's assertion that Hale affidavit should be ignored because it contradicts her prior deposition testimony because it doesn't.

First as to how long in minutes the two encounters with Sherman took, Hale said at her deposition that it probably took longer in her mind than it actually was [SER_009, Hale Depo. 74:6-10], so she was *not* contradicting the fact that she said in her affidavit that "Hale estimates this lasted for at least 15 to 25 minutes." [ER-37, Hale Aff. ¶9.] Hale only estimated in her affidavit how long it took. Further in her deposition she said it probably took longer in her mind than it actually was indicating that she was *not* sure how long it took and it could have taken shorter than she thought.

Second Hale did not contradict the fact in her affidavit that she felt that when Sherman allegedly said Hale could not handle the job that it was because she

---

desire. *See Boumehdi v. Plastag Holdings*, LLC, 489 F3d 781, 788 (7th Cir. 2007).

was a woman. In her deposition she said this same thing on pages 96, lns. 19-20 [SER_017, Hale Depo. 96:19-20] and page 236, "[H]e told me to get someone over there that could handle the job if I can't handle it" [SER_060, Hale Depo. 236:13-14] and on page 237, "I interpreted it that he's saying I can't handle it because I'm a women." [SER_061, Hale Depo. 237:2-3.]

As set forth above, although Sherman never actually said that Hale couldn't handle the job because she was a women, she reasonable interpreted that this was being said because of her sex/gender.

**D.** **Although Cosmopolitan Claims that Hale's Action for Retaliation must Fail as a Matter of Law because she did not Experience an Adverse Employment Action and Cannot Show Causal Connection with Respect to the Request to Recertify her FMLA, Hale has Met her Burden at the Summary Judgment Stage as Set Forth in her Opening Brief and Below.**

For purposes of a retaliation claim, a challenged action must be "materially adverse," meaning that it would dissuade a reasonable worker from exercising protected rights. See *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); see also *Ray v. Henderson*, 217 F.3d 1234, 1242-43 (9th Cir. 2000) (describing an adverse employment action as "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity"); *Xing Xing Lin v. Potter*, No. C 10- 03757 LB, 2011 WL 233053, at *11 (N.D. Cal. Jan. 22, 2011) (noting that the standard for "materially adverse employment decision" in the retaliation context is even lower than that required for a Title VII discrimination claim). Notably, the Ninth Circuit takes "an expansive view of the type of actions that can be considered adverse employment actions." *Ray*, 217 F.3d at 1241. Less severe actions can dissuade a reasonable employee from making a charge of discrimination than affecting the terms and conditions of employment. *Giovanetti v. Trustees of California State University (Humboldt State University)*, No. 04-cv-5514, 2007 WL 9735004, at *2 (N.D. Cal. Sept. 5, 2007).

While not exhaustive, actions such as an "employer's lateral transfer of an employee to another job of the same pay and status; the transfer of job duties; dissemination of unfavorable job references even if the employee is offered the new position; exclusion of an employee from meetings, seminars, and positions that would have made the employee eligible for salary increases; the unfair denial of secretarial support; and imposition of a more burdensome work schedule," have been found to constitute a materially adverse employment action for a retaliation claim *Demetrius Williams v. Denis R. McDonough*, No. 2:20-cv-10074, 2022 WL 18214015, at *17 (C.D. Cal. Nov. 7, 2022) (citing *Ray*, 217 F.3d at 1240-1243).

The liberal thrust of what may be considered a materially adverse employment action is precisely that no "act will be preemptively rejected" and that it will ultimately "be up to the jury to decide whether a specific act 'would have been materially adverse to a reasonable employee.'" *Giovanetti, 2007 WL 9735004*, at *3 (quoting *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53, 68 (2006).

Cosmopolitan first challenged that Hale has suffered an adverse employment action when was allegedly almost completely removed from Craps.

Although Cosmopolitan first claims they were taking affirmative steps to schedule her in craps more not less, as set forth in the opening brief both Hale and dealer Frank Acker says she was scheduled less after Hale complained about the Sherman incident and there is no reason that either of them would lie about this. [ER 38-39, 51-52, Hale Aff. ¶18, Ex. 5; ER-65-66, Acker Depo. 53:1-12, 53:14-54:19]  Thus at a minimum there is an issue of material fact there.

But more importantly Cosmopolitan claims that Hale was not hired specifically to work craps all the time and at any rate she suffered no decrease in pay, hours, etc.

This might be true but even though Hale might *not* have been hired to work craps one hundred percent of the time, the fact that craps was Hale's regular game

gave her a legitimate expectation that she would be assigned to craps and thus might have dissuaded her from reporting the harassment if she knew it would result in the change of her regular game with different responsibilities. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.")."[5]

Cosmopolitan next claims that it was *not* an adverse employment action that she was asked to recertify her FMLA shortly after she engaged in protected activity by reporting Sherman's conduct because she was calling in a lot of Fridays, her first day back to work after he normally scheduled days off and the law allows it.

Even though the law might have given Cosmopolitan the right to have Hale recertify her FMLA early, by having her recertify in April of 2018 instead of June or 2018, Hale lost over two months of certification. *See* probable end date of leave in Certification of June 20, 2018 and the start date in the Recertification of April 2, 2018, more than two month before the probable end date of June 20, 2018. [ER-150-152, Exhibit U, Certification and ER 153-157, Exhibit T, FMLA Recertification.]

Thus since her doctor had approved Hale for leave for the Fridays in question, it is reasonable to conclude that Cosmopolitan's actions of making Hale recertify early would dissuade a reasonable worker from exercising their protected rights.

Further as to whether Hale's reporting Sherman's conduct caused the request for Hale to recertify early, although Cosmopolitan claims that Sun Life Financial,

---

[5] This is even though as Cosmopolitan points out that Hale didn't mind working blackjack because it was less work. [SER_041, Hale Depo. 181:19-21.]

who administered their FMLA, requested the recertification, there is an issue of material fact as to whether Cosmopolitan told or had some input into Sun Life's decision to have Hale recertify early.

This is supported by the fact that employers are usually intimately involved in FMLA administration since they are ultimately responsible for the same and neither Sun Life or Cosmopolitan has said that Cosmopolitan did not tell or have some input into Sun Life's decision to have Hale recertify early.

Cosmopolitan next claims that it was *not* an adverse employment action for them to initially require Hale to take FMLA to see her elderly mother out of town who had suffered an aneurysm.

Although Cosmopolitan claims the law required it, ie, C.F.R. §825.305(a), that is *not* the case. Hale never sought to take FMLA to visit her mother and planned to take personnel leave because she was not going to care for her mother, just visit her. Thus there was no basis for her doctor to approve it as a FMLA and although Cosmopolitan ultimately approved it as a personal leave of absence, their initial stance was arguably based on retaliation for reporting the incidents.

Thus it is reasonable to conclude that Cosmopolitan's actions of initially wanting Hale to take FMLA to visit her elderly mother out of town even though there was no legal basis to do so would dissuade a reasonable worker from exercising their protected rights.

Finally Cosmopolitan claims that it was *not* an adverse employment action when Cosmopolitan wrote Hale up for missing time that should have been covered under her FMLA.

Although the time was ultimately covered under her FML after Hale questioned it and the write-up rescinded it arguably would dissuade a reasonable worker from exercising their protected rights.

## III.

## CONCLUSION

This case deserves to go to trial if the rule of law is followed here.

In the United States, there are two places where every American is supposed to be equal-at the ballot box and in the courtroom.

We already know about the recent attacks on a person's right to vote and have their vote counted. Unfortunate for some time now an individual's right to a jury trial in a civil case under the 7th Amendment to the Constitution has been under attack to the extent that now in courts like the District of Nevada, not only is it more likely than not that a litigant won't get a jury trial in a civil trial but odds of getting a jury trial in the District of Nevada, especially in an employment case, are becoming close to non-existent.

As U.S. Supreme Court Justice Hugo Black wrote in 1939, "[I]t is essential that the right to trial by jury be scrupulously safeguarded as the bulwark of civil liberty. Our duty to preserve the 7th Amendment is a matter of high constitutional importance."

This doesn't mean and Hale is *not* advocating that every civil case filed in federal court should get a jury trial, but it *does* mean that the law must be followed and what a district court judge thinks of a case or whether he or she thinks that it is worthy of a jury trial is irrelevant.

In this particular case, the district court did not follow the rule of law as it relates to the standards on either a motion to dismiss or a motion for summary judgment.

In particular under either standard the judge is required to look at what is plead or the evidence in a light most favorable and make all reasonable inferences in favor of the non-moving party.

Here the district court clearly gave its opinion on whether Sherman's

conduct was extreme and outrageous instead or deciding whether it was plausible or reasonable for a jury to conclude that Sherman's conduct was extreme and outrageous.[6]

Likewise the district court gave its personal opinion as to whether Sherman's conduct created a hostile work environment and whether Cosmopolitan's response to Sherman's conduct was adequate[7] instead of following the rule of law and determining whether it was reasonable for a jury to conclude that Sherman's conduct created a hostile work environment and whether Cosmopolitan's response to Sherman's conduct was adequate.

Thus it is incumbent for this court to allow this case to proceed to trial. An employee like Hale should *not* be harassed and disrespected like she was by Sherman as a condition of employment. We have laws to protect employees against harassment in the workplace and extreme and outrageous conduct by patrons or customers for a reason, and it should be up to a jury to decide whether those laws were violated in this case *not* the judge.

---

[6] *See* the district court's order on the motion to dismiss where it says, "[H]ale argues that Sherman's verbal statements are extreme and outrageous conduct proving intentional infliction of emotional distress. The court disagrees. Instead, the court finds that Sherman's conduct is akin to insults, indignities, or threats, not conduct which is outside all possible bounds of decency or utterly intolerable in a civilized community. (cites omitted.)", Motion to Dismiss Order at pg. 6, ln. 22-pg. 7, ln. 2.

[7] Summary Judgment Order at pg. 8, ln. 17-pg. 9, ln. 18.

DATED: 09/11/2023                    LAW OFFICES OF MICHAEL P.
                                     BALABAN


                        BY:  /s/ Michael P. Balaban
                             Michael P. Balaban
                             LAW OFFICES OF MICHAEL P.
                             BALABAN
                             10726 Del Rudini Street
                             Las Vegas, NV  89141

## STATEMENT OF RELATED CASES

Appellant is aware of no related cases pending before this court.

## CERTIFICATE OF COMPLIANCE

Pursuant to F.R.A.P. 32(a)(7)(B)(i) and Circuit Rule 32-1, I certify that this

Brief of Appellants is proportionately spaced, has a typeface of 14 points and

contains 5,696 words.

## CERTIFICATE OF SERVICE

I hereby certify that pursuant to Circuit Rule 25-5(f) a true and correct copy

of the foregoing document was electronically served via the Appellate ECF system to

the following person:


Lisa A. McClane, Esq.
Daniel I. Aquino, Esq.
*Attorneys for Defendant NV Property 1, LLC dba*
*The Cosmopolitan of Las Vegas*

Mark E. Ferrario, Esq.
Jason Hicks, Esq.
*Attorneys for Defendant Richard Sherman*



DATED:  09/11/2023              /s/ Michael P. Balaban
                               Michael P. Balaban